[Crim. No. 3257.   Second Appellate District, Division One.—December 11, 1939.]

THE PEOPLE, Respondent, v. BYRON L. BEARD, Appellant.

Byron L. Beard, *Alias* Fred S. Simpson, *in pro. per.*, for Appellant.

Earl Warren, Attorney-General, and Eugene M. Elson, Deputy Attorney-General, for Respondent.

YORK, P. J.—Appellant was convicted of the crimes of robbery in the first degree and assault with a deadly weapon, the jury finding that he was armed at the time of the commission of the offenses, as well as at the time of his arrest, appellant admitting a prior conviction of felony, as alleged in the information.

This appeal is prosecuted from the judgment of conviction and from the order by which appellant's motion for a new trial was denied, upon the grounds that (1) the evidence is insufficient to sustain the judgment; (2) the court erred in refusing to grant appellant a continuance for the purpose of securing new counsel and additional witnesses.

On October 1, 1938, one Bernard L. Sweney was the manager of a cigar store located at 5340 Crenshaw Boulevard in the city of Los Angeles and was admittedly operating therein a bookmaking establishment where bets on horseracing were made and accepted. Late in the afternoon of that day between 5 and 5:30 o'clock, appellant entered said establishment carrying a large revolver in his right hand and announced to the said manager and the eight or ten people there assembled: "I am a police officer, everybody in the back room . . . on your stomachs." Several people followed his directions and others ran out of the back door. The witness Kistler refused to go into the back room and grappled with appellant whereupon the latter struck him in the head rendering him unconscious. The witness Sweney had $100 in money and a 15 jewel white gold Waltham watch in his pockets and the witness Vanderwilt had $20 in his pocket all of which property was missing when appellant left after warning his victims to remain on their faces for five minutes after his departure. The witness Sweney testified that he saw something in appellant's hand which looked like a gun and while he was lying on his face on the floor in the back room a hand was placed in his pockets and his money and watch were removed; that he was unable to identify appellant

as the man who entered his place of business except that the man so entering wore a light grey suit similar to the suit worn by appellant at the time of the trial. The witness Kistler testified on cross-examination that when he heard the voice say "Get into the back room" he looked up and saw appellant holding a revolver in his right hand moving it back and forth and at the time of trial he identified People's exhibit one as the gun which he saw in appellant's hand or as one exactly like it.

The witness Fitzgerald, a florist, whose place of business was located one door south of the cigar store, testified that while standing on the sidewalk in front of his shop he saw appellant come out of the cigar store and walk south on Crenshaw Boulevard to Fifty-fourth Street, where he crossed the street and turned on Fifty-fourth Street to Eleventh Avenue and then continued south on Eleventh Avenue to the middle of the block where he was arrested by two deputy sheriffs.

Deputy Sheriff Stefan testified that he was in the vicinity of the premises in question around 5:30 in the afternoon of October 1, 1938, and observed appellant draw a revolver from his waist and at the trial he identified people's exhibit one as the gun taken from appellant at the time he apprehended him. A police officer of the city of Los Angeles, who arrived at the scene shortly after appellant was arrested by the two deputy sheriffs, searched appellant and found upon his person $108 in bills and a white gold 15 jewel Waltham watch, which he identified at the trial and which was identified in turn by Mr. Sweney as the watch which was taken from him as he lay on the floor in the back room of his establishment.

There was introduced in evidence a conversation which took place on October 3d between appellant and officer Stefan, in which appellant purportedly stated to the said officer that on September 20, 1938, he met a man by the name of Martin at a cafe in Hollywood, who asked appellant if he wanted to make some money; that appellant said he did, whereupon Martin told him about holding up some bookmaking establishments with which said Martin was familiar and that the "bookies would not dare to squawk"; that appellant told Martin he had no gun and Martin said he would get one for him; that on October 1st appellant drove

with Martin to the Crenshaw Boulevard address and Martin pointed out the place to him; that they drove to Fifty-fourth and Eleventh Avenue and parked the car on the west side of Eleventh Avenue just south of Fifty-fourth Street; that appellant got out and walked to the cigar store where he committed the robbery and assaulted a person, and then returned to Eleventh Avenue where he was to meet Martin and found that Martin and the car were gone.

Appellant took the stand in his own defense and testified that he had placed bets with Sweney and had lost $160; that after losing his money he returned and tried to get the money back, but Sweney told him he had lost the money and could not get it, and that appellant was an ex-convict and he did not want him hanging around his place; that when he (appellant) took the money from Mr. Sweney he must have got the watch mixed in with the money and he did not know that he had the watch until the officers took it away from him; that he did not take money from anyone except from Mr. Sweney. Mr. Sweney was recalled as a witness for the prosecution in rebuttal and testified that his watch was in his watch pocket on the right side of his trousers and the money was in the left-hand pocket of his trousers.

In connection with his first point, appellant urges that the verdict is contrary to law in that under the circumstances, which he related in his testimony, he could not be convicted of the crime of robbery when he sought only to recover money which he had lost in an illegal game. In support of this contention he cites the case of *People* v. *Rosen,* 11 Cal. (2d) 147 [78 Pac. (2d) 727, 116 A. L. R. 991], in which the defendant had frequented a tango parlor and had lost the sum of $1,000 playing tango. On the night in question he lost $55 and with the use of a revolver took $198 from the operator of the establishment and was subsequently charged with the crime of robbery. It was there held by the Supreme Court that ''When a party seeks the recaption of money lost by him at an illegal game, the intent to steal is lacking, for the law recognizes no title or right to possession in the winner.''

In the cited case there was no question but that the defendant therein had lost money playing a gambling game at the place which he robbed. In the instant case, except for

appellant's own testimony, there is not the slightest intimation that he had ever been inside the establishment before he committed the robbery, or that he had ever placed a bet with the manager Sweney. The evidence adduced at the trial is a complete demonstration of appellant's guilt of the crime charged in the information, and is amply sufficient to sustain the judgment of conviction.

█ Under his second point, appellant claims that the trial court did not afford him sufficient time within which to procure new counsel and obtain additional witnesses.

This is the second trial allowed the appellant, the judgment of conviction rendered at the first trial having been reversed by this court upon the ground that he was deprived of his constitutional right to aid of counsel in his defense, in that the trial court denied appellant's new counsel's motion for a continuance, and, despite said new counsel's statement that she could not represent appellant without time to prepare the defense, ordered the trial to proceed and it did proceed in the absence of any representation of appellant. (*People* v. *Simpson*, 31 Cal. App. (2d) 267 [88 Pac. (2d) 175].)

The clerk's transcript herein shows that on April 27, 1939, appellant and his counsel Edward J. McCurdy were present in department 41 of the superior court at which time trial was reset for June 2, 1939, and transferred to department 44, appellant waiving the statutory period; on June 2, 1939, Mrs. Gladys Towles Root was substituted for Edward J. McCurdy as attorney of record and the cause was transferred to department 40 for trial, and in the latter department appellant made a motion to have the trial continued to June 21, 1939, waiving statutory time.

When the cause was called for trial on June 21, 1939, appellant's counsel of record stated that she was ready but she understood that appellant wished to make a statement. Appellant then stated that his main witness was in Reno, Nevada, and would not be back for two weeks; that appellant had an understanding that he was to come down and plead guilty to assault with a deadly weapon and for that reason he did not have his witnesses there; that it was nine months since the crime was committed and that some of his witnesses had moved and some of them had died; and that he had the understanding, heretofore referred to, with his

lawyer. On the other hand, Mrs. Root at that time stated that appellant was told that she was "working on a plea" and that "in the last analysis it would be up to the district attorney's office"; that for a period of two weeks she had tried to get witnesses together, tried to get the help of appellant's sister; that one witness had died five months previously; that another had left for an unknown destination, a third was in Reno and that appellant's sister was endeavoring to obtain his presence at the trial. Mrs. Root further stated that she had not obtained the witnesses referred to for the reason that she had been unable to get them. Appellant then stated he was having trouble with his attorney and would like to get another lawyer, and Mrs. Root said she would be happy to be relieved. Associate counsel McPherson then stated that he had called to the attention of appellant several times that witnesses had not been subpoenaed and that about three weeks previous to June 21st he had told appellant that they should be ready for trial and that up to the day previous to June 21st no names had been given to counsel as the witnesses necessary to be subpoenaed, and that as late as 10 o'clock that night counsel had made investigation in an effort to run witnesses down. After considerable discussion, during which appellant told the court he did not want Mrs. Root and Mr. McPherson to defend him and that they had done nothing in the case to help him outside of telling him he was going to plead guilty, the court stated that it felt it necessary to compel Mrs. Root to proceed to trial, and denied the request for a continuance. During the course of the trial, the court allowed Mrs. Root to confer with appellant on numerous occasions and on one occasion appellant stated that he wanted to talk to the public defender and be advised as to his constitutional rights, whereupon the court summoned Mr. John Hill of that office, and appellant and Mr. Hill conferred off the record.

Appellant's counsel was ready to proceed with the trial of the cause, and the fact that appellant disagreed does not constitute ground for continuance. ■ An application for continuance on the ground of the absence of witnesses is addressed to the sound discretion of the trial court, and its ruling will not be reviewed except for the most cogent reasons.

(*People* v. *Collins,* 195 Cal. 325, at 332 [233 Pac. 97], citing 5 Cal. Jur. 968.)

In view of the fact that the cause was reset for trial almost a month in advance of the actual date of trial, and taking into consideration all the facts and circumstances revealed by the record, the denial of a continuance did not constitute prejudicial error.

The judgment and order appealed from are, and each of them is, affirmed.

Doran, J., and White, J., concurred.