[Crim. No. 2903. First Dist., Div. One. Dec. 14, 1953.]

THE PEOPLE, Respondent, v. RALPH W. LAMB, Appellant.

Ivan C. Sperbeck for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Clayton R. Janssen, Jr., Deputy Attorney General, for Respondent.

PETERS, P. J.—Defendant was charged with two counts of lewd and lascivious conduct alleged to have been committed upon children 8 and 6 years old, respectively, in violation of section 288 of the Penal Code. The jury brought in verdicts of guilty on both counts. Defendant appeals from the judgment of conviction and from the order denying his motion for a new trial.

The information charged and the evidence produced by the prosecution showed that the offenses involved occurred on the afternoon of May 23, 1952, in the home of appellant in Oakland. The evidence produced by the prosecution also showed that in addition to the two offenses charged in the information alleged to have been committed against Alberta, then aged 8 years and 9 months, and Loretta, then aged 6 years and 4 months, the appellant, at the same time and place, committed similar lewd and lascivious acts upon Kathleen, sister of Loretta, then aged 4 years and 10 months, and upon Patricia, sister of Alberta, and then aged 5 years and 4 months. All four girls were produced as prosecution witnesses. Patricia on *voir dire* was unable to qualify as a witness and was withdrawn. The other three girls qualified and were permitted to testify. The major contentions of appellant on this appeal are that the evidence is insufficient to sustain the judgments, and that the trial court committed prejudicial error in permitting these three young children to testify. It is also urged that the prosecuting attorney committed prejudicial misconduct in calling Patricia as a witness, and in making certain statements in his arguments to the jury.

There can be no doubt, if the three children who testified properly qualified, that their evidence supports the judgment. The three child witnesses all told substantially the same story, differing in some details, but substantially similar, as to the commission and the manner of the commission of the sexual acts constituting the operative elements of the crimes charged. There is no need to set forth these sordid facts in this opinion. Suffice it to say that these three girls, who live in the same general area as does appellant, testified that after school on May 23, 1952, they, together with Patricia, were playing on the railroad tracks adjoining appellant's property; that they went into his yard and ultimately into his house to play; that he invited the children to go upstairs to the bedroom; that there in the presence of all the children, and upon each child successively, he committed the first series of acts constituting violations of section 288 of the Penal Code; that a short time later, in the same bedroom, again in the presence of all the children, and again upon each child successively, he committed a second series of acts, different from the first, but also constituting violations of section 288 of the Penal Code. Alberta and Loretta also testified that, after these events, they took a bath in appellant's house and in his presence, and that appellant then told them an obscene

story. The mother of Kathleen and Loretta testified that her daughters complained to her of appellant's conduct upon their arrival home on the very day the acts are alleged to have been committed. The mother of Alberta and Patricia did not testify to any complaint made by her daughters, but did testify, somewhat ambiguously, that on August 27, 1952, three months after the offenses are alleged to have occurred, and one month after the information was filed, which in one count charged an offense against her daughter Alberta, her two girls came to her and stated that they had been over to appellant's home.

Complaint was immediately made to the police,. and Officer Curran of the Oakland Police Department interviewed appellant in the city jail. Curran testified that on May 24, 1952, appellant denied that the four children, or any of them, had, on May 23, 1952, been in his home. But on May 26, 1952, in a second interview, appellant admitted that the four children had been in his home on May 23, 1952, and that some of them had taken a bath there.

Appellant, as a witness on his own behalf, testified that he had been a railroad employee for 27 years, and had lived at the address where these acts are alleged to have taken place for some 18 years. He admitted that the four children had been in his home on May 23, 1952, but he denied committing any of the criminal acts testified to by the children and, in fact, testified that at no time while the children were in the house did he even go upstairs with them or know that they had gone upstairs. He denied that he had told Officer Curran that the children had gone upstairs and had taken a bath. It was his testimony that on May 22, 1952, Alberta and some other children not here involved, had played in his yard and had come into the house to get some water, and, while there, that he had permitted them to play on his typewriter; that on May 23, 1952, Alberta, in the company of Loretta, Kathleen and Patricia, without permission, walked into his house, and asked permission to play in his yard, which he granted; that they played in the yard and basement for a while and again entered the house; that Loretta and Alberta got into an argument and started to slap each other; that Loretta told him that Alberta had taken some gum and candy from a cabinet and some money from appellant's wallet; that appellant ordered them to stop fighting and to get out and not to come back. Alberta admitted taking some money from the wallet but testified that this occurred after the events in the bedroom had been committed, and that appellant saw her

take it and made no protest. The girls also testified that, in addition to the money taken by Alberta from the wallet, appellant, after committing the acts in the bedroom, gave each of them 10 cents.

Appellant testified that the children then left, and that he then discovered that $5.50 was missing from his wallet. Alberta's testimony was that it was $1.25. At any rate, the children left and bought some coca cola, candy, potato chips and ice cream with the money they had taken or received. Appellant then testified that the children returned to his home with their purchases and again entered his kitchen; that he charged Alberta with taking the money, but she replied that she had secured it from her own bank; that Alberta then asked permission, which he granted, to put the ice cream into his refrigerator; that the children went out on the back lawn to eat the candy, etc.; that Alberta returned to the house and got the ice cream; that the children then left.

The evidence is obviously sufficient, if admissible, to sustain the judgment. Appellant stresses the difficulties of an accused in meeting such charges, and, after comparing the testimony of the three child witnesses, emphasizes some of the inconsistencies in their stories. He urges the possibility that the children had been coached in their testimony, and concludes that their stories are so fantastic as to be incredible and not entitled to belief. ▮ It is undoubtedly true that appellate courts will critically examine the record in cases involving charges of sex crimes against children, and will consider the fact that the prosecution's case depends upon the testimony of a child or children of tender years in determining the prejudicial nature of other errors. (*People* v. *Byrd*, 88 Cal.App.2d 188 [198 P.2d 561]; *People* v. *Adams*, 14 Cal. 2d 154 [93 P.2d 146].) But such cases usually depend upon the uncorroborated testimony of one child as to the commission of the acts. Here three children testified as to the acts that were committed. Although there are some variations and inconsistencies in their testimony, all three of the children testified as to the acts that were committed and how they were committed, and all three stories are consistent and in some detail. Most of the arguments now made by appellant as to the sufficiency of the evidence should have been and were urged in the argument to the jury. The appellate court cannot reweigh the evidence. The stories here, although involving unusual and perverted conduct, are not so fantastic

as to be inherently improbable. Under such circumstances, the determination of the jury as to the credibility of the witnesses is conclusive on an appellate court. (*People* v. *McBride*, 69 Cal.App.2d 331 [159 P.2d 59]; *People* v. *Mangus*, 5 Cal.App.2d 353 [42 P.2d 681]; *People* v. *Hicks*, 76 Cal.App.2d 142 [172 P.2d 565].)

The next major contention of appellant is that the trial court abused its discretion in allowing the three child witnesses to testify, it being claimed that these witnesses failed to qualify under section 1880 of the Code of Civil Procedure. That section provides:

"The following persons cannot be witnesses: . . .

"2. Children under ten years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly. . . ."

■ This section lays down two qualifications that a child under 10 must possess before such child can testify—(1) such child must be capable of receiving "just impressions" at the time the facts testified to occurred, and (2) such child must be capable of "relating them truly" at the time of trial. (*People* v. *Watrous*, 7 Cal.App.2d 7 [45 P.2d 380].) That case also held that there was a third related but independent requirement and that is that (p. 10) "there must be some understanding, before the oath is administered, of the nature and obligation thereof." (See, generally, 18 Cal. L.Rev. 85.)

■ The trial judge, because of his ability to see how the child acts on the stand, possesses considerable discretion in determining whether a child under 10 possesses these qualifications. (*People* v. *Daily*, 135 Cal. 104 [67 P. 16]; *People* v. *Meraviglia*, 73 Cal.App. 402 [238 P. 794]; *People* v. *Tibbetts*, 102 Cal.App. 787 [283 P. 830]; *People* v. *Walker*, 112 Cal.App. 146 [296 P. 692].)

■ In determining whether a child sufficiently can recollect and narrate, the appellate court is not limited by the *voir dire* examination, but may examine the subsequently given testimony. Subsequently given testimony, if clear, relevant and coherent, may be used to support the ruling on qualifications. (*People* v. *Walker*, 112 Cal.App. 146 [296 P. 692]; *People* v. *Arcia*, 85 Cal.App.2d 127 [192 P.2d 31]; *People* v. *Denton*, 78 Cal.App.2d 540 [178 P.2d 524]; *People* v. *Gibbons*, 83 Cal.App.2d 504 [189 P.2d 37].) ■ The trial court properly may decide that a child has the ability to recollect and narrate even though he cannot remember and

narrate some simple facts. Thus in *People* v. *Slobodion,* 31 Cal.2d 555 [191 P.2d 1], a 6-year-old child was held qualified in spite of his expressed opinion that there were twelve days in a week, was unable to fix the month of the occurrence, was unable to describe the size of defendant, and there was some evidence of coaching. In *People* v. *Carpenter,* 3 Cal.App.2d 746 [40 P.2d 524], a 6-year-old misstated her age, could not give the date of her birthday nor her address, but, nevertheless, based upon her subsequently given coherent testimony, was held qualified.

As to whether a child witness has demonstrated sufficiently a disposition for truthfulness, no religious belief or conviction is necessary, nor need the child have any detailed knowledge of the nature of the oath. As long as the child understands that some earthly evil will follow if he does not tell the truth, that is all that is required. (See, generally, 13 Cal.L.Rev. 285, 289.) In *People* v. *Delaney,* 52 Cal.App. 765 [199 P. 896], a child of four was held properly qualified insofar as disposition for truth was concerned (but held disqualified because of his inability to recall) on testimony that he went to Sunday School, that his mother taught him to tell the truth, and that boys who lie go to jail. After first holding that a child need not understand the nature of an oath and that no belief in divine punishment was needed other than a sense of moral responsibility, the court stated (p. 770) : ''For these reasons we think that, to qualify a child under ten years of age, upon the score of his moral responsibility, it is sufficient that he understands that it is his duty to tell the truth and that he will somehow be punished if he does not. . . . With us, as we have said, intelligence and not belief is the true test.''

In *People* v. *Carpenter,* 3 Cal.App.2d 746 [40 P.2d 524], it was contended that a child of 6 should have been disqualified because she testified that she did not know what happened to little girls who did not tell the truth except that she was spanked when she lied. The appellate court appropriately stated (p. 748) : ''As a certainty, neither a child of six years nor any other person 'knows what happens' to anyone who does not tell the truth. The fact that the child knew that for such conduct ordinarily she suffered corporal punishment was a sufficient knowledge of consequences that would result to her from such misconduct in that regard.'' (See, also, *People* v. *Thourwald,* 46 Cal.App. 261 [189 P. 124].)

■ How do these rules apply to these three children? Alberta was 8 years and 9 months old when the acts were committed, and 9 years and 2 months old when called upon to testify. On her *voir dire* she gave her age, her birthday, the name of her school, the grade in school she attended— the low fourth—her address, and the names and ages of her sisters. She testified that she attended Sunday School "once in a while," and learned there what "happens" to those who do not tell the truth. She stated that it was "bad" not to tell the truth, and that she would not lie in the courtroom. In response to questions put to her by appellant's counsel she stated that she knew that if she lied she would get a whipping, but she was unable to describe what happens to adults when they lie. Appellant's objections to her qualifications "on the ground the *voir dire* examination does not show that she knows the purpose of an oath" was overruled. She then testified, her testimony covering some 47 pages of transcript. Her testimony is coherent, clear and plausible. In her cross-examination appellant's counsel was able to develop but few inconsistencies. That testimony clearly indicates that her powers to recollect and to narrate were ample to comply with the code section. While her testimony as to her understanding of an oath, and the necessity of telling the truth is not too clear nor positive, it is sufficient to disclose that she knew she should tell the truth and would be punished if she did not, so as to comply with the rules as stated in *People* v. *Delaney,* 52 Cal.App. 765 [199 P. 896], and *People* v. *Carpenter,* 3 Cal.App.2d 746 [40 P.2d 524], cited above. The objection was properly overruled.

■ Loretta was the next child witness produced. She was 6 years and 4 months old on May 23, 1952, and 6 years and 9 months old at the time of trial. On *voir dire,* with some hesitancy, she testified as to her name and address, gave her age as 6, stated that she was in the low second grade, and gave her teacher's name. She stated, in answer to leading questions asked of her by the court, that she attended Sunday School every Sunday where she has been taught the difference between right and wrong, and to tell the truth; that she knows what the truth is, and that if it is not told you "Go down to the devil"; that the devil was not going to get her, and that she intended to tell the truth; that one who does not tell the truth is a "brat." She stated that she understood the difference between the truth and a fairy story; that a fairy story was not the truth; that it was wrong to make up a fairy story

except in play, and that she would not tell a fairy story while testifying but would tell just what she remembered. She was sworn in as a witness without objection by appellant. Her direct and cross-examination covers 31 pages of the transcript. It, too, is clear, coherent and plausible. Although there are some inconsistencies, and perhaps some contradictions, in her testimony, they are all minor in nature. As to the acts committed by appellant upon her and upon the other children, her testimony is detailed, clear, and entirely corroborates that of Alberta. Although she had to be led on her *voir dire,* her answers then, and when testifying as a witness, demonstrated that she had the ability to recollect and narrate. She answered key questions directly and intelligently. The *voir dire* demonstrated, even more clearly than in the case of Alberta, that Loretta knew of the necessity of telling the truth.

 It should also be mentioned that failure to challenge or object to a child's qualifications constitutes an implied waiver which precludes the raising of the point on appeal. (*People* v. *Aleshire,* 90 Cal.App.2d 506 [203 P.2d 569]; *People* v. *Collins,* 5 Cal.App. 654 [91 P. 158]; *Trigueiro* v. *Skow,* 24 Cal.App.2d 253 [74 P.2d 836].)

There was no error in permitting Loretta to testify.

 The last child witness was Kathleen, sister of Loretta, who was 4 years and 10 months old on May 23, 1952, and 5 years and 3 months old at the time of trial. She had some difficulty at the beginning of her *voir dire* examination. She could not tell her correct age, insisting at all times that she was but 5 months old. However, without coaching, she gave her name, the names of her sisters and their ages, stated that she attended kindergarten, and gave the name of her teacher. She testified that she attends Sunday School regularly; that she knows what it means to tell the truth; that she is scolded and hit when bad; that she would be a bad girl if she did not tell the truth, and would go "down there" if she told a lie, and that she would "go up there" if she told the truth. She also stated that a fairy story was a lie and that what really happened was the truth. Not only was no objection made to her qualifications, but, at the close of the *voir dire,* counsel for appellant stated: "I am satisfied." Thereupon, she was sworn as a witness, her direct and cross covering 16 pages of the transcript. Her testimony is also clear, coherent and plausible. It amply demonstrates that she possessed the requisite powers of recollection and narration. Her understanding as to the necessity of telling

the truth appears from the summary above. Moreover, there was an express waiver as to this child's testimony. She was a qualified witness.

 Appellant next contends that error of a prejudicial nature was committed in calling Patricia to the stand. Patricia, sister of Alberta, was 5 years and 4 months old on May 23, 1952, and 5 years and 9 months old at the date of the trial. On *voir dire* she refused to say anything at all. She refused to respond to questions put to her by the court and the prosecuting attorney as to her age, school attendance, her sister's name, and her place of residence. This witness was then withdrawn by the prosecution. She did not return to the stand. Appellant asserts that the mere production of this witness, in view of her complete inability to testify, constituted misconduct, and that she was only called to prejudice the appellant, particularly since the balance of the evidence showed that Patricia was one of the victims. There is nothing to substantiate the charge that Patricia was not produced in good faith. Testimony was secured from three children, ages 5, 6 and 9, and there is nothing in the record to indicate that the prosecutor knew he could secure no evidence from Patricia. Even if the prosecutor must be charged with knowledge of the inability of Patricia to testify (*People* v. *Adams,* 14 Cal.2d 154, 165 [93 P.2d 146]), her mere production as a witness in a case where three other children testified in detail as to the acts involved would not and could not have been prejudicial.

The appellant argues very broadly that the prosecuting attorney was guilty of misconduct in his arguments to the jury, but fails to specify what the claimed misconduct was. We have, nevertheless, read the arguments. They were fair and objective, and remarkably free of appeals to passion and prejudice that frequently are made in such cases. In only two instances, during the arguments, were there any objections made by appellant to the prosecutor's argument, and in both cases the jury was promptly admonished that counsel's statements were not evidence. The first objection was directed at a slight factual overstatement that could not have been deliberate and was not prejudicial. The second objection related to an objection to the prosecutor's statement of law to the effect that if the jury found that appellant had committed violations upon the girls of section 702 of the Welfare and Institutions Code then the defendant would, of necessity, be guilty of a violation of section 288

of the Penal Code. The objection was that this was a misstatement of law because it precluded the jury from finding the commission of a lesser included offense. During the course of the discussion the court promptly and carefully told the jury that they should disregard statements of law made by counsel and determine what the law was from his instructions. The statement of law by the prosecutor was incorrect because, if the jury had believed that the only offense committed by appellant was that he had told the children an obscene story and had not touched them, the violation of section 702 of the Welfare and Institutions Code would not have been a violation of section 288 of the Penal Code. (*People* v. *Greer,* 30 Cal.2d 589 [184 P.2d 512].) But the repeated cautionary instructions removed any question of prejudice.

This case was thoroughly and ably tried on both sides. The appellant was fairly treated by both the judge and the prosecutor. No prejudicial rulings or misconduct appear.

The judgment and order appealed from are affirmed.

Bray, J., and Wood (Fred B.), J., concurred.

A petition for a rehearing was denied December 29, 1953.