[Crim. No. 1396. Fourth Dist. Nov. 17, 1958.]

THE PEOPLE, Respondent, v. JAMES MICHAEL POLAK, Appellant.

Condra & Lesh for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Assistant Attorney General, for Respondent.

SHEPARD, J.—Defendant herein was charged with the crime of violating Penal Code, section 288, in that he molested, sexually, a 7-year-old girl whom we will hereinafter call "K."

The evidence produced by the prosecution was substantially that K and a 10-year-old companion, whom we will hereinafter call "B," had secured some chrysanthemum plants from the home of one of them and were going about the residential neighborhood attempting to sell them when they came to the defendant's residence. B rang the house doorbell, defendant opened the door, both children entered the front room, defendant told B to sit down and told K to come into the bedroom with him. K and the defendant entered the bedroom, out of sight of B. Defendant lifted K, asked her if she saw any money on the dresser, pulled down her pants, kissed her private parts, pulled up her pants, kissed her cheeks, gave her two nickels and a dime, and K and B then left the house. While in the bedroom K said she saw a jewel case on the dresser and some gum, and that she saw a crib in the room. B corroborated the story up to the time K entered the bedroom, but saw nothing of what went on in the bedroom. There was a slight divergence in testimony between B and K about the money. B said K gave him a nickel and kept 15 cents, K said she gave B all the money consisting of two nickels and a dime.

Neither K nor B were ever in the house before or after this occurrence.

Frank H. Ashcraft, a police sergeant of 13 years' experience, interrogated the defendant and made a full written report. He testified that the defendant at first denied ever having taken the children into the house at all; that when told the story of the children he then admitted that he had taken the children into the house, had taken K into the bedroom, had lifted her on one arm and had a funny urge to put his hand under her dress, but when he looked into her face he ''couldn't do it.'' The People then rested. Defendant as a witness denied the commission of the offense; denied that the children came into the house at all, except B who spilled some dirt on the floor near the front door and was immediately shoved out by defendant; stated that he did receive some plants and gave a nickel to each of the children; that at the time this all occurred there were four girl scouts selling cookies at a house about 32 feet away in direct view of what went on outside his front door. He further denied telling Sergeant Ashcraft that he took K into the bedroom or having a funny urge or intent to put his hand under her dress. On cross-examination, over the objection of defense counsel, he was asked and denied saying to Sergeant Ashcraft that he, the defendant, blacked out at times; that he had headaches in Korea; that he was sent to a hospital and later transferred to a hospital at Oak Knoll; that he was there told he was suffering from paranoia; of thinking of having himself committed to a hospital; of having trouble with his wife; of having trouble with his work; of going out with other women; that he did not love his wife; that he felt resentful toward her; of having felt he would like to kill his wife; of telling the arresting officers ''they'' were selling weeds; of saying to the officer at the time of arrest that his wife was not at home. He said that the following morning Officer Nicholson presented to him the statement made out by Officer Ashcraft and that he refused to sign it. He denied, however, that he admitted to Officer Nicholson that he had lifted the child on his arm with the intention of committing lewd acts.

Defendant's wife testified to taking the family laundry to her mother's home near by; that her husband's uncles Abraham and Ben Polak came, picked up the baby in its basket and took it to the defendant's home, located a short distance downhill from where she was doing the laundry; that the back door was open when she left and was still open when she got home;

that she and her husband had a happy home life, normal sex life, no quarrels, and that she was home when the policemen came to arrest her husband. Abraham Polak testified that he and his brother Ben Polak came to visit, picked up the baby in the basket, took it down to defendant's home, and then he and his brother Ben left. Ben Polak offered the same testimony and the court rejected it upon the objection of the district attorney. Other witnesses testified to the presence in the neighborhood of some girl scouts selling cookies, of seeing B and K and that they were not perturbed (but the time schedule was not tied down). Defendant called a girl scout leader as a witness and unsuccessfully attempted to secure the names of these girls. The court sustained an objection to further testimony by the scout leader on the ground of immateriality.

Sergeant Ashcraft on rebuttal contradicted nearly all of the answers of the defendant relative to his interrogation of defendant. Three other officers contradicted the defendant's testimony in several other respects.

 Defendant first complains that the trial court abused its discretion in refusing to permit defense counsel further inquiry on *voir dire* examination of K on the subject of her ability to receive just impressions of facts and to relate them truly.

In this connection the district attorney first asked 13 questions of this type. The court then declared itself satisfied. Defense counsel then, with the court's permission, proceeded to ask 16 more questions. The court then terminated the questions over objection of defense counsel. Defense counsel's questions were directed mostly to the grade of school she was in, the calendar month, her ability to read, the number of months in a year, reading a calendar, number of weeks in a month, and time of day. These questions might partly test her educational attainments but were not helpful on the real subject at hand. Code of Civil Procedure, section 1880, provides that subject, where it states:

"The following persons cannot be witnesses: . . .

"2. Children under ten years of age, who appear incapable of receiving just impressions of the facts respecting which they are examined, or of relating them truly."

The questions might have been helpful had they been directed to the description of some objects or happenings in the court room within sight of the court, so that the court might observe the reactions of the child in describing objects,

things and happenings and in remembering them. After 29 questions of the type above related we see no error in the court terminating the questioning. In addition, it is to be noted that defense counsel did not directly object to the witness' competency to testify. (*People* v. *Lamb,* 121 Cal. App.2d 838, 845 [4] [264 P.2d 126].)

 Further, the lucidity of K's answer amply justifies the court's decision in allowing her to become a witness. Matters of this kind must of necessity rest in the sound discretion of the court. (*People* v. *Lamb,* 121 Cal.App.2d 838, 844 [4] [264 P.2d 126].)

 Defendant next complains that witness Ben Polak's testimony was refused by the court on the ground that it was immaterial. Defense counsel in offering this testimony states, ''I will offer proof by this witness that at the time he left the house this baby was put in the basket in the bedroom where this little girl, who testified yesterday, claims that she went.''

This fact was never in issue. K was never asked if she saw a baby nor was she asked to describe the ''crib'' she said she saw, nor was she asked about other objects that might have been in the room. Apparently defense counsel had some sort of idea that testimony that there was a bassinet instead of a crib would contradict the testimony of K that she saw a crib. Webster's International Dictionary, among other definitions, describes a ''crib'' as a ''wicker basket.'' Shipley's Dictionary of Word Origins states that the word ''crib'' came from a Latin word, cribellum, meaning ''sieve,'' the connotation, of course, being again like a woven basket. K was never asked to describe a ''crib,'' nor were any questions asked about what kind of terminology she was taught in her own home. The testimony of Ben Polak so offered could in no way have contradicted K. The trial court was correct.

 Defense counsel complains further of the court's refusal to allow defense counsel to pursue an unsuccessful attempt to secure from the girl scout leader the names of some other children who might possibly have been witnesses of value. No explanation was offered by counsel to the trial court as to why the court's assistance had not been sought earlier. At the time this objection was sustained the trial was well along into the afternoon of the second day, the testimony was nearly completed, and arguments to the jury would start in another hour or so. The questions being asked should have been brought to the attention of the court long

before the trial started. We cannot find the court in error in view of the fact that no explanation was given as to why the court's assistance in witness discovery had not been asked sooner, and even had the information as to the witnesses' names been elicited there was still no assurance that the witnesses sought could ever be found, or if found would know anything of value.

■ "The court's power to grant a continuance because of the absence of a material witness is discretionary, and its determination will not be reversed on appeal unless there has been a clear abuse of discretion." (*People* v. *Markos,* 146 Cal.App.2d 82, 86 [3] [303 P.2d 363] ; *People* v. *Beard,* 36 Cal.App.2d 35, 40 [3] [96 P.2d 961] ; *People* v. *Beal,* 108 Cal. App.2d 200, 205 [11] [239 P.2d 84].)

■ Prejudicial misconduct is also charged against the district attorney. We have read the entire record. It is true that the district attorney two or three times overstepped the bounds of gentlemanly conduct, twice being admonished by the court. However, we see no pattern of action that could seriously prejudice the rights of the defendant or the opinion of the jury. Mostly, the acts were directed at counsel and not defendant, and were of a type that could only redound in the mind of a normal jury to the discredit of the district attorney. The court was likewise correct in not permitting the intimation by the district attorney of lack of sobriety on the part of a defense investigator to become the subject of testimony to create a false diverting issue.

■ The defendant contends that the remark of the district attorney that certain matters if "brought out here would be prejudicial to defendant's case" was improper. With this we agree. However, the words of the district attorney were called forth in an attempt to explain to the court why the district attorney wished to ask a leading question. ■ The control of leading questions lies in the sound discretion of the court. ■ It later became fully apparent to the jury what the district attorney was referring to and we feel that little, if any, harm was done in this particular instance by the error complained of. ■ The question of the harmfulness of the error depends in every instance on the particular circumstances of each case. In the case of *People* v. *Fleming,* 166 Cal. 357, 377, 381 [136 P. 291, Ann. Cas. 1915B 881], relied upon by defendant in this respect, the district attorney had baldly asserted a number of other acts of brutality and then made no offer whatever to follow up with proof of his good faith.

 Defendant next complains that the court committed prejudicial error in allowing the cross-examination of the defendant as to portions of the conversation with Sergeant Ashcraft which were not directly alluded to in defendant's direct examination as is hereinbefore set out, and in permitting Sergeant Ashcraft to take the stand on rebuttal to contradict defendant's testimony on such matters. This objection is apparently based primarily on defense counsel's feeling that the matters thus referred to were prejudicial to the defendant and were immaterial. He cites in support of his contention *People* v. *Mohr*, 157 Cal. 732 [109 P. 476]; *People* v. *Glass*, 158 Cal. 650 [112 P. 281]; and *People* v. *Evans*, 39 Cal.2d 242, 251 [246 P.2d 636].

 There can be no question as to the correctness of the rule, often repeated, that the repeated asking of questions relative to objectionable and prejudicial matter which involve appeal to the passions and prejudices of the jury is reversible error.

 However, in none of the cases cited was the defendant being cross-examined about matters involved in a statement to a police officer wherein the police officer contended that serious admissions had been made by the defendant. In the case at bar, the defendant had testified in full denying not only the offense alleged to have been committed but also denying the admissions to the officer directly concerning the offense at bar.

 " 'The authorities all agree that wide latitude should be allowed in cross-examination for the purpose of testing accuracy or credibility, especially if the witness is a reluctant one or is hostile, or if he is one of the parties in interest, *or is a witness against a defendant in a criminal prosecution*. The court has, however, discretionary power over cross-examination which will be disturbed on appeal only in case of an abuse thereof. Thus the court may confine an examination within reasonable limits, and *may curtail a cross-examination which is unduly protracted, frivolous, or which relates to matters which are irrelevant, admitted or have already been fully covered*. (Emphasis added.)'

 "The fundamental feature of cross-examination '. . . is that a witness, on his direct examination, discloses but a part of the necessary facts. That which remains suppressed or undeveloped may be of two sorts, (a) the remaining and qualifying circumstances of the subject of testimony,

as known to the witness, and (b) the facts which diminish the personal trustworthiness of the witness.

" '(a) The remaining and qualifying circumstances of the subject of testimony will probably remain suppressed or undisclosed, not merely because the witness frequently is a partisan, but also and chiefly because his testimony is commonly given only by way of answers to specific interrogatories . . . and the counsel producing him will usually ask for nothing but the facts favorable to his party. If nothing more were done to unveil all the facts known to this witness, his testimony (for all that we could surmise) might present half-truths only. Someone must probe for the possible (and usual) remainder. The best person to do this is the one most vitally interested, namely, the opponent. Cross-examination, then, i.e. further examination by the opponent, has for its utility the extraction of the remaining qualifying circumstances, if any, known to the witness, but hitherto undisclosed by him.' (Wigmore, vol. V (3d ed.), § 1368, p. 33.) " (*People* v. *Whitehead,* 113 Cal.App.2d 43, 48 [247 P.2d 717].)

Most of the questions outside the exact formula of direct testimony, i.e., relating to defendant's service in Korea, blackouts, headaches, paranoia and hospitalization, would to an ordinary juror have elicited for the defendant only sympathy and not prejudice. Only the most calloused and ungrateful fail to have a stirring of sympathy for a veteran of the armed services. Paranoia is commonly known as an illness symptomized by delusions of persecution and, sometimes, of grandeur. It is not imputed to induce sex aberrations. Without indicating that the court should not have restricted some parts of this cross-examination and of the rebuttal testimony incident thereto, it is nevertheless true that cross-examination used in good faith must be allowed considerable latitude or the truth will never be known. (*People* v. *Winston,* 46 Cal. 2d 151, 157 [6] [293 P.2d 40].)

We have examined the entire record in this case carefully, and we are unable to say that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error complained of. (*People* v. *Watson,* 46 Cal.2d 818, 836 [12] [299 P.2d 243].)

The judgment is affirmed.

Griffin, P. J., and Coughlin, J. pro tem.,* concurred.

---

*Assigned by Chairman of Judicial Council.