GERALD DEWAYNE WILSON, APPELLANT, *v.* THE
STATE OF NEVADA, RESPONDENT.

No. 10918

April 30, 1980                                    610 P.2d 184

*Morgan D. Harris,* Public Defender, Clark County, for Appellant.

*Richard H. Bryan,* Attorney General, Carson City; and *Robert J. Miller,* District Attorney, Clark County, for Respondent.

## OPINION

By the Court, MOWBRAY, C. J.:

Gerald Dewayne Wilson appeals from his conviction of attempted sexual assault on a minor under the age of fourteen years, NRS 200.366. We affirm.

Wilson's sole contention on appeal is that an eight year old witness was incompetent and his testimony, therefore, should not have been admitted into evidence. At trial, the child testified that Wilson had forced his way into the apartment in which the child was alone with his twenty-three month old sister, had taken the infant into the bedroom and had committed the sexual assault. The child further testified that Wilson then left, threatening him with harm if he told anyone of the crime.

Prior to receiving the testimony, the trial court conducted a voir dire examination of the child and found him competent to testify. Wilson had been charged with sexual assault. The jury, however, returned a verdict of guilty of attempted sexual assault, apparently finding that there was insufficient evidence of penetration to constitute the crime of sexual assault.[1]

The standard of competence for a child witness is that the child must have the capacity to receive just impressions and possess the ability to relate them truthfully. Fields v. Sheriff, 93 Nev. 640, 572 P.2d 213 (1977). A trial court's finding of competence will not be reversed on appeal absent a clear abuse of discretion. Terrible v. State, 78 Nev. 159, 370 P.2d 51 (1962). On appeal, this Court is not confined to a review of the voir dire examination; rather, we look to the subsequent testimony as well, which may support a finding of competence "if clear, relevant and coherent." Id. at 160, 370 P.2d at 51.

Appellant refers us to various inconsistencies in the child's testimony and in the voir dire examination, contending that they establish the child's incompetence. Inconsistencies in testimony go to the weight to be given the evidence by the jury

---

[1]An expert witness testified that penetration of a twenty-three month old girl would be "almost impossible" without obvious damage to the child, and there was no evidence that any such damage had been observed.

rather than to the question of competence. Shuff v. State, 86 Nev. 736, 739, 476 P.2d 22, 24 (1970); State v. Shambo, 322 P.2d 657 (Mont. 1958). Moreover, the inconsistencies referred to by appellant relate to matters peripheral to the crime alleged: the testimony reveals that at the time of trial (approximately nine months after the commission of the crime), the child had difficulty remembering whether he had spoken to police officers at the time of the incident, could not remember in detail what he was doing in the general time period surrounding the event, and was easily confused by cross examination relating to his previously given testimony. The child's account of the crime, however, was the same at trial as his original relation of the incident, and it did not change under cross examination. *See* Harris v. State, 261 P.2d 909, 916 (Okla.Crim.App. 1953). We cannot say that the child's testimony was so "inherently improbable," People v. Lamb, 264 P.2d 126, 130 (Cal.App. 1953), as to establish the witness' incompetency as a matter of law. Nor has appellant shown that the testimony was "coached or rehearsed," Jordan v. People, 419 P.2d 656, 661 (Colo. 1966), *cert. denied,* 386 U.S. 992 (1967), to a degree sufficient to justify overturning a trial court's finding of competency. Therefore, the judgment of the district court is affirmed.

THOMPSON, GUNDERSON, and BATJER, JJ., concur.

MANOUKIAN, J., dissenting:

I respectfully dissent. In my view, the trial court abused its discretion in finding that a child witness was competent to testify. As a result, appellant was convicted of attempted sexual assault of a child under the age of fourteen, NRS 200.366, a felony, and sentenced to twenty years in prison.

Marc, seven years of age at the time of the alleged crime, was the chief witness for the state. He testified that on the morning of August 6, 1977, appellant Wilson knocked on the door of the apartment in which Marc was alone with his twenty-three month old sister, Lolita. Marc opened the door because the knock sounded like that of his mother who was at work. Wilson entered the apartment and pushed Marc over. Appellant then "was searching through house" and then brought Lolita into the bedroom from the living room where she had been watching television and sexually assaulted her. According to Marc, Wilson "took his ding-a-ling and stuck it in her, and she started crying. . . ." On cross-examination Marc would say yes when asked if Lolita had yelled and screamed. Marc then got a knife from the kitchen and told Wilson to get off of his sister.

Marc stated he did not tell his mother of the incident later, though, as Wilson had said he knew where to get Marc if he told anyone. After a *voir dire* examination had been held outside the presence of the jury, the district judge ruled that Marc was competent to testify. Marc then related his story to the jury.

Other evidence shows that when Marc's mother returned home, she noticed nothing unusual. She said Lolita appeared "irritable" but that that was normal. On August 8, two days after the alleged assault, a neighbor asked Marc's mother if her daughter had been raped. Apparently, Marc had mentioned the incident to the neighbor's daughter and thirteen-year-old son who had told their mother. Marc's mother then summoned the police and took Lolita to the hospital, where the examination revealed a slight redness around Lolita's vaginal area.

The state called a nurse who was present at the examination. The nurse testified that the conclusion of the examining physician was that there was no tenderness, no swelling and no sexual penetration. The hymen was not torn or broken. The redness, or an irritation termed "erythema," was located in the area between the outside labia and inside labia. A medical expert, called by the defense testified that it would be "almost anatomically impossible" for a sexual assault to be perpetrated on a two year old in any situation and, if it was accomplished, it would not be done without significant damage. The record contains other explanations for the redness which are inconsistent with criminality and, in fact, characteristic of infancy.

A police officer testified that he assisted in the conduct of a photographic lineup approximately one month after the incident. At that time Marc was shown seven color photographs of black males in their early twenties. Marc "quickly picked out" appellant's photograph. The officer acknowledged that Marc did not say that appellant was the one who assaulted Marc's sister, although he "seemed to be pretty much aware of why he was there. . . ." On cross-examination, the officer also admitted that appellant stood out in the photos as a man of smaller stature.

Appellant presented an alibi stating that he had been out late the night before and slept late that morning in a friend's apartment. This was partially corroborated by the friend who said that they were out until 2 a.m. and that she slept until noon but could not be certain that appellant had. Although she had no specific recollection as to what time appellant woke up, she did testify that they commonly slept late.

It is true that a finding of competence by a trial court will not

be reversed unless there is a clear abuse of discretion. *Terrible v. State*, 78 Nev. 159, 370 P.2d 51 (1962). Nevertheless, this court is not confined to a review of the *voir dire* examination of the child, but may look at the subsequent testimony by the witness. *Id.* at 160, 370 P.2d at 51. Support for a finding of competence may be found in subsequent testimony "if clear, relevant and coherent." *Id.*

Marc's testimony was inconsistent in several respects. His ability to recall circumstances surrounding the alleged assault was concededly flawed. At the initial hearing, and in response to a question by the court, Marc thought that he had been attending school at the time of the incident. Later, in the presence of the jury, Marc stated that he was living with his mother in Las Vegas on Saturday, the day of the incident. In fact, Marc attended school from September to June while living with his father in Illinois.

On direct examination, Marc stated that his sister "started crying" when appellant assaulted her. On cross-examination, Marc said yes when asked if Lolita yelled and screamed. Marc testified on *voir dire* that he had not spoken to any policeman about the incident. Before the jury he said that he had talked to a policeman and, on cross-examination, he admitted that he simply had not remembered talking to a policeman. Marc also said he knew what the word "screw" meant although at the preliminary hearing he had stated he did not know what it meant. More importantly, Marc testified that he had been unable to remember parts of his testimony before discussing it with the district attorney prior to the trial and that the district attorney had had to describe what Marc purportedly saw to get him to answer questions.

Marc's testimony demonstrated additional problems. Marc consistently stated that he had told his mother about the incident on the Monday nine days after the Saturday occurrence. In fact, Marc had told his mother the Monday two days after the incident. Marc did identify appellant as having been in the apartment complex. But when asked by the court, "Did you see that person do anything unusual at the Moulin Rouge [apartments]?", Marc answered, "Could you describe that to me?" I also note that while Marc selected appellant's picture from the photographic lineup, it appears that appellant was the only person Marc knew.

All of these factors combine to indicate an inability on Marc's part to distinguish between what was true and what was not true. Marc was also confused about the distinction between not knowing or remembering something and telling a lie about it. When Marc first said that something did not happen (such as

that he talked to a policeman) he would later admit he had simply forgotten. Under the standard of competency, Marc's testimony was tantamount to an inability to appreciate the nature of an oath. *See* State v. Hastings, 477 S.W.2d 108 (Mo. 1972).

We have held, under the former statutory standard of competency, NRS 48.030, that inconsistencies in testimony go to weight rather than competence. Shuff v. State, 86 Nev. 736, 739, 476 P.2d 22 (1970); State v. Shambo, 322 P.2d 657 (Mont. 1958). Other courts have emphasized that incompetence is not shown when inconsistencies go to peripheral matters, but the child "never wavered" in his testimony as to the crime itself. Harris v. State, 261 P.2d 909, 916 (Okla.Crim. 1953). Nevertheless, when the child's testimony is "inherently improbable," *see* State v. Lamb, 264 P.2d 126, 130 (Cal.App. 1953), or "coached or rehearsed," Jordan v. People, 419 P.2d 652, 661 (Colo. 1966), *cert. denied,* 386 U.S. 992 (1967), competence and, therefore, admissibility, is involved. In this case, Marc's testimony on *voir dire* and at trial indicates that he had no recollection of the alleged assault independent of his discussion with the district attorney before trial. *See* State v. Robertson, 480 S.W.2d 845, 847 (Mo. 1972).

Other factors contained in the record cast serious doubt, not only upon Marc's credibility, but on his ability to recollect and relate truthfully what he observed. *See* Shuff v. State, 86 Nev. at 738, 476 P.2d at 23–24. Marc testified that he brandished a knife at appellant but was sufficiently threatened that he could not tell his mother; Marc did, however, tell his friends. The mother noticed nothing at all wrong with her daughter and the subsequent examination revealed only a slight redness. The *medical testimony indicated an anatomical impossibility* that the assault had occurred as Marc portrayed it. And, although his sister cried or screamed (it is uncertain just what she did), Marc said she went to sleep after the incident. It is unlikely that no one in the apartment complex would hear the child screaming while she was being assaulted. Under these circumstances, where there is no evidence other than the testimony of a seven-year-old child that a crime was committed, and the testimony is not only inconsistent but "inherently improbable" as well, I perceive no alternative but to conclude that the trial court abused its discretion in finding the child witness competent.

Moreover, even without the witness competency question, on this record the evidence which supports the verdict of the jury was, in my view, so insufficient as to preclude rational triers of fact from rendering a guilty verdict on any offense. Jackson v. Virginia, 99 S.Ct. 2781 (1979). If juries within our

criminal justice system can convict when evidence of guilt is so marginal, the standard of proof applicable at trials would be rendered meaningless. I would reverse the judgment of conviction.