[Civ. No. 4783. Fourth Dist. Nov. 24, 1954.]

EDYTHE SCRIBNER et al., Appellants, v. JOHN
EDWARD BERTMANN et al., Respondents.

Stanley M. Arndt for Appellants.

Richard M. Hall and Martell Thompson for Respondents.

GRIFFIN, J.—Plaintiffs and appellants Scribner, husband and wife, brought this action for claimed injuries to the wife, alleging that on October 16, 1950, she slipped on the floor of a bakery owned and operated by defendants and respondents Bertmann. It is further alleged that an invitee, Mrs. Scribner (hereinafter referred to as plaintiff) entered the store at about 10 a. m. to purchase some bread; that she slipped and fell to the floor because the floor was negligently maintained and was unsafe, dangerous and slippery, and as a proximate result of defendants' negligence she was injured.

Defendants Bertmann answered, denied generally these allegations, alleged contributory negligence on the part of plaintiff, and claimed that plaintiff's claimed injuries were the result of an inevitable and unavoidable accident so far as defendants were concerned. Subsequently defendant and respondent Lewis Schaffert, who was sued and served as one of the fictitiously-named defendants, filed a similar answer. Upon the trial of the action by the court, sitting without a jury, it found generally that defendants were not negligent and that plaintiff's injuries were due to her own negligence. It then found in favor of the defendants and entered judgment accordingly. These findings and judgment based thereon will be later discussed.

The first question presented is the sufficiency of the evidence to support this finding. Plaintiff, aged 69, and weighing about 138 pounds at the time of trial, testified generally that she got out of her car at the curb and walked into the bakery to buy her favorite bread; that she had been there on several occasions before but had never noticed any slippery condition; that as she entered the lighting conditions were "very good"; that she did not look at the floor but walked toward the glass bread-showcase; that she was wearing "Cuban" high-heeled shoes about 2 to 2½ inches in height; that her feet went out from under her and she fell down backwards on her spine; that a lady clerk and also Mr. Bertmann came from the rear of the store and asked if they could help her up and she arose by herself; that Bertmann said: " 'I told that man not to put that wax on that floor' . . . he hit his counter like that (indicating)' '; that she did not examine the floor to see what, if anything, caused her to fall; that she paid for her bread and walked out to the car; that her daughter left the car and went into the bakery.

The daughter testified she asked to see Mr. Bertmann, and while waiting for him she "noticed skid marks in the wax" on the floor where the shoes and heels had skidded along "similar to a tire mark on a road" about 10 to 12 inches in length; that the floor was highly polished and one could see "little bumpiness where the skid marks ended" but she did not remember calling them to the attention of anyone; that when Bertmann came into the front part of the store from the back room she identified herself and told him of her mother's fall and he sent her to his insurance company's office around the corner; that thereafter she and her mother drove to San Diego to attend a convention and after their return they consulted a doctor and found there was some injury causing a pain of which plaintiff complained. This was the only direct evidence of any excess amount of wax on the floor and it appears that the daughter might well have been an interested witness. Plaintiff claimed that she paid the daughter, who was living at home with her mother, around $1,500 for her services in caring for the mother during this period. The trial court was entitled to consider this fact in weighing her testimony.

Defendant Mr. Bertmann was called under section 2055 of the Code of Civil Procedure and testified generally that the front door of the bakery was not unlocked until 9 a. m.; that he walked from the back end of the store to the front door and returned; that the floor had been waxed on Sunday,

October 15, by defendant Lewis Schaffert, who had been coming once each month, for a period of years, for that particular purpose and that he was not an employee of his business but was paid on a monthly basis for his services; and that he never heard of any prior slipping on that floor in his store.

Defendant Schaffert was called as plaintiff's witness. He testified he waxed the floor for Bertmann on October 15th, and no further questions were propounded. Medical testimony was received as to plaintiff's injuries and the care given her. Thereafter a nonsuit was denied.

Mrs. Davis, saleslady for Bertmann, testified she was in the bakery on the morning in question placing bakery goods in the glass case; that plaintiff came in and was looking in the case; that she noticed plaintiff had on very high heels and was a tiny woman; that plaintiff turned and slipped and that she went down and was in a sitting position; that she walked around the counter, put her arms under plaintiff's elbow and assisted her up, and she went back to the car with plaintiff; that no bread was sold to her because it was not available at that hour; that Mr. Bertmann was not in the front part of the store at the time but she called him later and he came out and talked to plaintiff's daughter. She then testified that she walked around the floor of the store that morning and it was "very clean" and there was nothing unusual noticed about them; that when plaintiff was there that morning, as well as afterwards, she saw no scratches or anything like skid marks on the floor, and she believed she would have noticed them if there had been anything unusual about the floor because she was working around there and dusting in front of the counter.

Defendant Bertmann then testified in his own behalf and said he was not in the store when plaintiff came in but was working back in the bake shop, and emphatically denied making the statement to plaintiff that "he told that man not to put that wax on the floor"; that he did not know of plaintiff's claimed fall until informed of that fact by his saleslady after plaintiff left the store; that he never saw her until her deposition was taken in his attorney's office sometime later; that the fresh bread was not made until noon and that when his saleslady told him of plaintiff's fall he went to the claimed spot and rubbed his foot around on the floor in several places to see its condition and it was "clean, no skid marks of any kind," and he noticed no slipperiness; that he looked and saw no evidence of "bumpiness of wax"; and that plaintiff's

daughter said nothing to him about any noticeable marks. He reiterated his testimony to the effect that defendant Schaffert was in an independent business of his own in waxing and cleaning floors and was paid by the month for such service; that he had no control over his work and stated that the manner in which he cleaned and waxed the floor was according to his own judgment; that he had a key to the premises and did this work once each month, generally on Sundays, and that he never saw him wax the floors. He then stated that the floor has remained in that same condition ever since and no person has slipped or fallen on it.

The main force of plaintiff's argument is that since the court denied a motion for nonsuit it was shown that plaintiff had established a prima facie case against defendants, and since there was no sufficient contradiction of that evidence plaintiffs should have recovered; that since it was undisputed that the floor had been waxed the day before the accident and that plaintiff, an invitee, slipped thereon, an inference of negligence arose upon the part of the invitor, and since there was not sufficient evidence to rebut that inference the trier of fact may not disregard that inference and find for the defendants, citing such cases as *Burr* v. *Sherwin Williams Co.,* 42 Cal.2d 682 [268 P.2d 1041]; *Dierman* v. *Providence Hospital,* 31 Cal.2d 290 [188 P.2d 12]; *Druzanich* v. *Criley,* 19 Cal.2d 439 [122 P.2d 53]; *Hatfield* v. *Levy Bros.,* 18 Cal.2d 798, 804 [117 P.2d 841]; *Nicola* v. *Pacific Gas & Electric Co.,* 50 Cal.App.2d 612 [123 P.2d 529]; and *Cagle* v. *Bakersfield Medical Group,* 110 Cal.App.2d 77 [241 P.2d 1013].

 In the Burr, Dierman and Druzanich cases the doctrine of res ipsa loquitur was being discussed and even in those cases the rule is stated to be that the application of the doctrine of res ipsa loquitur does not give plaintiff an absolute right to a judgment in every case. It does not shift the burden of proof, and when the defendant produces evidence to rebut the inference of negligence, it is ordinarily a question of fact whether the inference has been dispelled. It is true that the trier of facts cannot arbitrarily disregard an inference. In the other cases cited the plaintiff recovered judgment and the question was as to the sufficiency of the evidence of negligence to sustain the verdict. In those cases it was held that in an action for injuries sustained from a fall on a waxed office floor the question of whether the floor was so slippery that it was dangerous to walk upon or whether the condition was reasonably safe, was a question of fact.

If we indulge all intendments which favor sustaining the findings of the trier of facts, as we must do, there was sufficient evidence produced to contradict any inference of negligence on the part of defendants that might have arisen and it was clearly a question of fact for the trial court to determine. (*Estate of Isenberg,* 63 Cal.App.2d 214, 216 [146 P.2d 424] ; *Girvetz* v. *Boys' Market, Inc.,* 91 Cal.App.2d 827, 829 [206 P.2d 6] ; *Sharpless* v. *Pantages,* 178 Cal. 122, 125 [172 P. 384] ; *Vaughn* v. *Montgomery Ward & Co.,* 95 Cal.App.2d 553, 556 [213 P.2d 417] ; *Lyons* v. *Thrifty Drug Stores Co., Inc.,* 105 Cal.App.2d 844, 846 [234 P.2d 62].)

Some complaint is made of the fact that counsel for defendants did not call defendant Schaffert to the witness stand as their witness to testify as to the manner in which the wax was applied and the quantity and quality used, and plaintiff contends that by reason of the suppression of that testimony, and since he was the only one in a position to prove those facts, it must be presumed that his testimony would be adverse to him and his codefendants, and that such presumption should not be disregarded by the trial court, citing section 1963, subdivisions 5 and 6 and section 2061, subdivisions 6 and 7, Code of Civil Procedure; *Dierman* v. *Providence Hospital, supra*; and *Humiston* v. *Hook,* 86 Cal.App.2d 101 [194 P.2d 122].

The witness was present and testified for plaintiff under section 2055 of the Code of Civil Procedure, and if there was any indication that he possessed knowledge of any facts that would be beneficial to plaintiff, counsel for plaintiff had the opportunity of eliciting those facts. As heretofore indicated, there was substantial evidence produced, without the aid of this testimony, whatever it may have been, and which would only have been corroborative, to support the testimony of other witnesses. Accordingly, the cases relied upon by plaintiff would not necessarily be determinative of the factual question. (*Moore* v. *Spremo,* 72 Cal.App.2d 324 [164 P.2d 540] ; *Lyons* v. *Thrifty Drug Stores Co., Inc., supra.*) Some of the cases relied upon by plaintiffs involve the doctrine of res ipsa loquitur, which was not applicable in the instant case. (*Vaughn* v. *Montgomery Ward & Co.,* 95 Cal.App.2d 553, 556 [213 P.2d 417].)

A peculiar question arises in reference to the validity of the findings and judgment ultimately entered in this action. The cause was tried by the judge on June 16, 1953, and on June 30, he announced in open court: "Judgment for the defend-

ants." Thereafter, on July 6, counsel for the Bertmann's prepared proposed findings and judgment and served adverse counsel with a copy. They apparently only disposed of the case insofar as it applied to defendants Bertmann. On July 14, counsel for plaintiff filed objections thereto and on July 31, the court signed and filed the findings presented to it which, generally, found certain paragraphs of plaintiff's complaint to be untrue, and that the allegations of defendants' answer containing the several claimed defenses were true. It specifically found, however, that any damages suffered by plaintiff were not proximately caused by any negligence "of defendants Bertmann," and that any damages suffered by plaintiff were proximately caused by her own negligence. Judgment was entered that plaintiff take nothing from defendants Bertmann. Then came the dawn, and someone awakened to the fact that defendant Schaffert was not included in the findings or judgment. "Amended Findings of Fact" and an "Amended Judgment" were presented to the court and on August 3d copies were mailed to counsel for plaintiff in Los Angeles. Without further ado, the court, on August 4th, signed the "Amended Findings of Fact" which reiterated the findings generally adopted in respect to the defendants Bertmann, and also applied them to defendant Schaffert and his answer and claimed defenses, and found that although plaintiff was an invitee of the premises of the Bertmanns it was not true as to defendant Schaffert; that any damages suffered by plaintiffs were not proximately caused by any negligence of defendants Bertmann or defendant Schaffert, and if any damage was suffered it was proximately caused by the negligence of plaintiff. The amended judgment signed on the same day ordered that plaintiff take nothing from the Bertmanns or defendant Schaffert.

It is now contended by plaintiffs that the trial court erred in not complying with section 634 of the Code of Civil Procedure in respect to the amended findings, which section provides:

"In all cases where findings are to be made, a copy of the proposed findings shall be served upon all parties to the action and the court shall not sign any findings therein prior to the expiration of five days after such service. . . ."

It is contended that accordingly plaintiff had no opportunity to object thereto; that now two sets of findings of fact and two judgments have been signed and filed in the same

case, each different from the other; that neither defendant endeavored to have this situation corrected on a motion for new trial or otherwise; that under the authority of *Beyerbach* v. *Juno Oil Co.*, 42 Cal.2d 11 [265 P.2d 1], the trial court is without power to set aside an order involving a judicial action regularly made, and enter another and different order without notice to the adverse party; that accordingly, the second judgment was void and ineffective; that the trial court has no inherent power to correct or amend findings after they have been signed and filed, and any order so amending them is void; that judicial errors committed by the court in the rendition of its findings and judgments cannot be thus summarily corrected after the entry of judgment; and that there can be only one judgment in a case of this sort. (Citing *Stanton* v. *Superior Court*, 202 Cal. 478 [261 P. 1001]; *Delmuto* v. *Superior Court*, 119 Cal.App. 590 [6 P.2d 1007]; *Jones* v. *Clover*, 24 Cal.App.2d 210 [74 P.2d 517]; *McKannay* v. *McKannay*, 68 Cal.App. 709, 713 [230 P. 218]; and *Evans* v. *Dabney*, 37 Cal.2d 758, 760 [235 P.2d 604].) It is from these so-called "Original Judgment" and "Amended Judgment" that plaintiffs have appealed. No motion for new trial was made by plaintiffs.

The question before us appears to be whether the correction or amendment of the findings and judgment was for the purpose of correcting a so-called "clerical error" or whether it may be classified as a "judicial error." If classified as a "judicial error" the ultimate result would be to reverse the judgments and order a proper set of findings to be made and one proper judgment entered thereon.

If it may be classified as a "clerical error," i.e., inadvertence of the judge in signing the judgment which did not correctly embody or carry out the judgment as previously judicially ordered, the court, on being informed of such, may correct it.

In *Harman* v. *Cabaniss*, 207 Cal. 60 [276 P. 569], the question was raised as to the power of the superior court to correct an alleged clerical error in the findings and to order judgment in accordance with the corrected findings, even though the interlocutory decree sought to be set aside was entered pursuant to the mandate of the Supreme Court. The Supreme Court there said that the superior court has full power to determine whether the alleged error was clerical or judicial in character, and if clerical, to set aside the interlocutory decree, correct the error, and enter judgment on the

findings as corrected and conclusions of law to be drawn therefrom. ■ To the same effect is *George* v. *Belkins Van & Storage Co.*, 83 Cal.App.2d 478, 480 [189 P.2d 301], where it is said:

"The general rule with respect to the power of the court to modify a judgment does not preclude the court from correcting clerical errors and misprisions either in the entry of the judgment or due to inadvertence of the court. The term 'clerical error' covers all errors, mistakes, or omissions which are not the result of the exercise of the judicial function. ■ If an error, mistake, or omission is the result of inadvertence, but for which a different judgment would have been rendered, the error is clerical and the judgment may be corrected to correspond with what it would have been but for the inadvertence. (Citing cases.) The court has inherent power to correct such errors. This power extends to striking out findings of fact and conclusions of law and a judgment and substituting wholly different findings of fact and conclusions of law and judgment. . . . If a judgment is corrected because of a clerical error or mistake either by amendment or the substitution of a wholly different judgment, the amended or substituted judgment speaks as though originally entered in its amended or substituted form. Such an amendment leaves the original judgment otherwise effective and unimpaired." (Citing cases.)

It is true in that case that the amendment was ordered after denying a motion for new trial. However, the distinction between a "judicial error" and a "clerical error" clearly appears. In *Estate of Goldberg*, 10 Cal.2d 709 [76 P.2d 508], it was held that when, on the face of the record, it appears that a clerical error has been committed and carried into the judgment or decree the court has the authority and the power to correct such error. See also *Davis* v. *Rudolph*, 80 Cal.App.2d 397 [181 P.2d 765]; *Martin* v. *Ray*, 74 Cal.App.2d 922 [170 P.2d 75]; *Estate of Layton*, 217 Cal. 451 [19 P.2d 793, 91 A.L.R. 480]; and *People* v. *Ward*, 141 Cal. 628 [75 P. 306].

■ Here, it is apparent that the trial court did announce its decision in open court that it found in favor of all defendants on all issues presented. It was the duty of counsel for defendants to prepare findings accordingly. ■ Apparently the trial judge, believing the first findings, as drawn, complied with this order for judgment, signed these findings and judgment. Counsel for plaintiff made no objection to

these findings, as presented, on the ground that they did not dispose of the action as to the codefendant Schaffert, but waited until this appeal to raise the question for the first time. Whether we accept the theory that the trial court endeavored to correct a "judicial error" or a "clerical error," the ultimate judgment, no doubt, would be the same, and no prejudicial error would result. We conclude that it was a clerical error and was subject to amendment.

Some objection is made to the form of the findings. It is contended that the trial court found certain paragraphs of the complaint to be true and others to be untrue when in fact the evidence as to some of the facts found was contrary thereto or they were admitted by the defendants. Complaint is made of this so-called "shot-gun" form of findings, citing *Furlong* v. *White,* 51 Cal.App. 265, 271 [196 P. 903]; and *Falloon* v. *Superior Court,* 79 Cal.App. 149, 157 [248 P. 1057].

While this particular form of findings, in general, may be condemned, yet where the particular findings sufficiently recite wherein the material claims of plaintiffs are untrue, and sufficiently set forth the truth of the material facts necessary to support the judgment, the judgment may not be reversed for the reasons indicated unless the findings are materially contradictory. Such is not the case here.

The trial court definitely found that defendants were not negligent and that if plaintiff suffered damage it was due to her own negligence. Such a finding would preclude a recovery by plaintiffs, regardless of the other irregularities pointed out. The claim that the court failed to find whether defendant Schaffert was acting as an independent contractor or as agent for the Bertmanns would therefore become immaterial. Assuming technical error in relation to some of the other findings made, the burden of showing prejudice was on the plaintiffs. (*Hartford* v. *Pacific Motor Trucking Co.,* 16 Cal.App.2d 378 [60 P.2d 476]; *Bourke* v. *Frisk,* 92 Cal.App.2d 23 [206 P.2d 407]; 24 Cal.Jur., p. 963, § 200 et seq.)

The other points raised are sufficiently covered or are not meritorious.

Judgment affirmed.

Barnard, P. J., and Mussell, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied January 19, 1955.