[Civ. No. 25032. Second Dist., Div. Three. Nov. 29, 1961.]
FRANCES AGNEW, Plaintiff and Appellant, v. EDWIN LARSON, Defendant and Respondent.

Frances Agnew, in pro. per., for Plaintiff and Appellant.

Harold B. Pool for Defendant and Respondent.

VALLÉE, J.—Appeal by plaintiff from an adverse judgment in an action for damages for malpractice by a physician. The cause was tried by the court sitting without a jury.

During 1934 to 1938, inclusive, plaintiff employed de-

fendant Dr. Larson to treat her general physical condition. In April 1934 he prescribed for and caused vaginal suppositories containing an estrogen known as Theelin to be administered to her. In February 1935 he prescribed for and caused a drug known as Thyro-Ovarian Emplets to be administered to her.

On January 27, 1942, plaintiff employed Dr. Larson to examine her and prescribe medical treatment or medication. On numerous occasions to and including June 1, 1943, Dr. Larson prescribed and directed her to take a hormone consisting of Stilbestrol in tablet form. She took the tablets at the times and in the number directed. On June 1, 1943, Dr. Larson prescribed an additional 100 tablets of the drug to be taken one tablet a day.

Prior to taking the additional tablets she stopped obtaining treatment from Dr. Larson and shortly prior to July 17, 1944, she employed Dr. John Wilson to further administer to her. On July 17, 1944, at Dr. Wilson's direction, she obtained the additional 100 tablets prescribed by Dr. Larson and took one a day. Dr. Wilson prescribed additional quantities of the same drug. From April 8, 1942, to January 27, 1945, plaintiff took a total of 51.75 milligrams of the drug.

Dr. Larson held himself out as a doctor of medicine possessing that degree of skill and learning ordinarily possessed by other reasonable, skillful, and prudent physicians practicing in the community. He knew plaintiff's mother had had cancer of the breast and had died therefrom.

On January 15, 1945, plaintiff discovered a lump in her right breast. Laboratory tests disclosed cancer. On February 10, 1945, plaintiff's right breast was removed.

The foregoing facts were stipulated.

The complaint alleged that in prescribing Stilbestrol for plaintiff, Dr. Larson negligently prescribed a drug which is a synthetic estrogen containing cancerous properties which would produce or cause cancer of a woman's breast or stimulate or activate the growth of dormant or latent cells, particularly in women with a family history of cancer of the breast. The court found these alleged facts to be untrue.

The complaint also alleged the taking of Stilbestrol over the prolonged period, considered in connection with plaintiff's physical condition and family history of cancer of the breast, caused her cancerous condition; Dr. Larson failed to possess or exercise that degree of skill and learning ordinarily possessed and exercised by other skillful physicians practicing

in the County of Los Angeles; as a proximate result thereof plaintiff suffered general and special damages. The court found these alleged facts were not true.

It is also alleged the Theelin suppositories and Thyro-Ovarian Emplets caused the development of foreign growths, tumors, and polyps in plaintiff's uterus, of which Dr. Larson had knowledge after March 29, 1938; the same contributed to the condition which resulted in the removal of plaintiff's breast. The court found these alleged facts to be untrue.

In addition to the findings stated above, the court found: 1. Dr. Larson exercised that degree of skill and learning ordinarily possessed by other reasonably skillful and prudent physicians practicing in the County of Los Angeles at the time. 2. The foreign growths, tumors, and polyps found in plaintiff's uterus had been there since 1930 and prior to the time Dr. Larson prescribed Theelin suppositories and Thyro-Ovarian Emplets. 3. The Stilbestrol prescribed for and taken by plaintiff was not capable of causing stimulation of latent cancer cells and did not cause cancer in the breast of plaintiff.

Plaintiff's first assignment of error is that the evidence does not support the findings. The point cannot be sustained. No purpose would be served in relating the evidence at length. Dr. Larson's deposition was read in evidence by plaintiff. He testified Stilbestrol did not cause stimulation or more rapid growth of cancer; it had no tendency to cause or increase cancer; neither Theelin nor Thyro-Ovarian Emplets had any effect on latent or incipient cancer; they neither cause nor stimulate polyps; during the period from January 27, 1942, to January 1945 Stilbestrol was a medication in general use by physicians and surgeons in good standing in the County of Los Angeles; large doses of it will inhibit the growth of cancer; during the years mentioned it was used and prescribed by physicians and surgeons in good standing in the County of Los Angeles for the care and cure of cancerous conditions; the malignancy which developed in plaintiff's breast was not caused by the administration of the Stilbestrol or the Theelin or the Thyro-Ovarian Emplets. On motion of defendant it was ordered that the deposition of Dr. Larson, read into the record by plaintiff, also be considered as his testimony in his own behalf.

Dr. John Wilson died prior to the trial. His deposition was in part read in evidence. He denied that Stilbestrol contains cancerous properties which may produce or cause cancer

of a woman's breast. He denied that Stilbestrol should not be administered to women with a family history of cancer of the breast.

In response to a hypothetical question embodying the facts we have related, Dr. R. B. Jenkins, who had treated hundreds of patients suffering from cancer of the breast and who had used and prescribed Stilbestrol, Theelin, and Thyro-Ovarian Emplets in hundreds of cases, testified that in his opinion a physician who had done the things Dr. Larson had done had exercised that degree of skill, care, and diligence ordinarily exercised by physicians in good standing in this community; the use of Stilbestrol by plaintiff in the amount and over the period shown by the evidence did not cause cancer in her breast and could not have aggravated any cancerous condition which might have existed in her breast.

Plaintiff is laboring under a misconception as to the power of this court. She says she produced a preponderance of the evidence. The question, which side produced the preponderance of the evidence, was for the trial judge. ▮ An appellate court decides questions of law only. ▮ When the contention is that the evidence does not support the findings, as in the present case, we examine the record to determine whether there is any substantial evidence supporting the findings. ▮ An appellate court can only consider evidence most favorable to the findings. (*Gillespie* v. *Gillespie*, 121 Cal.App.2d 95, 97 [262 P.2d 607].)

Plaintiff argues the weight of the evidence and the credibility of witnesses at great length. ▮ ''[W]e have no power to judge of the effect or value of the evidence, to weigh the evidence, to consider the credibility of the witnesses, or to resolve conflicts in the evidence or in the reasonable inferences that may be drawn therefrom.'' (*Overton* v. *Vita-Food Corp.*, 94 Cal.App.2d 367, 370 [210 P.2d 757].) If there is any such evidence, our task is at an end. In this case the findings are supported by substantial evidence.

▮ Plaintiff also contends the court abused its discretion in denying her motion for a continuance when the cause came on for trial on August 4, 1959.

The original complaint was filed on January 15, 1946. An amended complaint was filed on March 29, 1946, to which a demurrer was sustained without leave and judgment entered. On October 31, 1947, the judgment was reversed. (*Agnew* v. *Larson*, 82 Cal.App.2d 176 [185 P.2d 851].) Answer was filed January 15, 1948. A second amended complaint on

which the action was tried was filed December 14, 1951.
Answer was filed and the cause was at issue on March 3, 1952.
The cause was set for trial and ordered off calendar at the
request of plaintiff on five occasions. There were 15 continu-
ances. There were three mistrials, one due to misconduct of a
juror and one due to illness of counsel for plaintiff. The third
was granted on motion of defendant. The record does not
show the ground. Plaintiff says it was "because of the defec-
tion, unquestioned by either the trial Court or plaintiff's at-
torney, of two jurors." In the meantime, a settlement was
had between plaintiff and Dr. John Wilson. In 1955 Dr.
Wilson, who was a prospective witness for defendant, died.
The cause came on again for trial on June 17, 1959. On June
17, pursuant to stipulation, trial was continued to August 4,
1959. The minute order says, "No More Continuences on
Plaintiff's Motion." On August 4 counsel for plaintiff
moved for a continuance on the ground a pretrial had not been
had and Dr. Marcus Rabwin, one of plaintiff's witnesses, who
had been served with a subpoena duces tecum and on June 17,
1959 had been ordered to return on August 4, was out of the
state on August 4 and not available to testify until September
1, 1959. The motion was denied. The minute order says:
"No More Continuences on Plaintiff's Motion."

Plaintiff says the order of August 4, 1959, "No More Con-
tinuences on Plaintiff's Motion," was discriminatory,
arbitrary, and was an abuse of discretion, and denied her due
process.

 The trial court has a wide discretion in granting or
denying continuances, and its decision is not disturbed on
review unless a clear abuse of discretion is shown. (*Estate
of Kay*, 30 Cal.2d 215, 225-226 [181 P.2d 1]; *Schlothan* v.
*Rusalem*, 41 Cal.2d 414, 417 [260 P.2d 68].) The rule ap-
plies when the motion is made because of the absence of a
material witness. (*People* v. *Polak*, 165 Cal.App.2d 226, 232
[331 P.2d 662].) If a material witness is absent from
the trial there must be a showing that the facts expected to
be proved by the absent witness cannot otherwise be proved.
(*Ferrari* v. *Mambretti*, 70 Cal.App.2d 492, 493 [161 P.2d
275].) The affidavit in support of the motion was de-
ficient in this respect. At bar the testimony of Dr. Rabwin
at a prior trial was read in evidence as part of plaintiff's
case. Furthermore, plaintiff concedes Dr. Rabwin might
have been a hostile witness.

The memorandum to set for trial had been filed prior to

January 1, 1957. In such a case a pretrial was not required. (See Amendments to Rules for the Superior Courts, 47 Cal.2d 9, par. 7.)

On the record, the court did not err in denying plaintiff's motion for a continuance. (*People* v. *Markos,* 146 Cal.App. 2d 82, 86 [303 P.2d 363].)

Plaintiff argues a number of other matters. She says the trial judge wrongfully ignored all evidence of her claims and decided the case solely on the testimony of a biased witness presented by defendant whom she calls an accomplice of defendant. She criticizes the trial judge for interrupting the reading of the testimony of Dr. Rabwin. She complains of the lost time in bringing the case to trial. She says defendant has been concealing himself and his assets and refused to return to California. She refers to the attorneys who represented her and the difficulties she had in obtaining attorneys to represent her. She refers to what she calls a gentlemen's agreement that the trial would be continued until Dr. Rabwin returned. She complains of other matters of a similar nature.

There is no merit in any of these matters. Plaintiff's strictures of the trial judge are wholly unwarranted. The record shows a careful, painstaking, conscientious trial judge. At the conclusion of the trial he commented in extenso on the evidence and the qualifications of the respective witnesses. It is asserted the trial judge misjudged plaintiff's case and made contradictory statements. The assertion is based on statements made by the judge during the trial and in summing up the evidence. "No antecedent expression of the court, whether casual or cast in the form of an opinion, can in any way restrict its absolute power to declare its final conclusion upon proper submission of the cause; nor will such an expression, casual or otherwise, furnish any basis for attack on a finding unless it be 'made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below' (*People* v. *Newland,* 15 Cal.2d 678, 681 [104 P.2d 778]).'' (*People* v. *Smith,* 176 Cal.App.2d 688, 692 [1 Cal.Rptr. 661]; *People* v. *Emory,* 192 Cal.App.2d 814, 826 [13 Cal.Rptr. 889].) In the present case it is not made to appear that on no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below.

With the exception of an appeal, of three mistrials and one continuance at the request of defendant, it appears the time lost was caused by plaintiff and her attorneys. Defendant

was living in Arizona. Whether defendant concealed himself to avoid being present at the trial was a question for the trial judge. Plaintiff was represented by able counsel at the taking of defendant's deposition and at the trial. There is no evidence of any agreement that the trial would be continued until Dr. Rabwin returned.

Plaintiff contends the court abused its discretion in denying her motion for new trial. In her affidavit in support of the motion she stated: "[P]laintiff was thereby deprived of her right to a fair trial, in that she was deprived of her right to have the subpoenaed witnesses present, especially Dr. Marcus Rabwin who not only operated on plaintiff twice, for cancer of the breast, but could have testified to the material fact that he, Dr. Rabwin, instructed plaintiff in February, 1945, when she consulted him as to the lump on her right breast, to stop taking Stilbestrol prescribed by defendant, Dr. Larson and told plaintiff it was a dangerous drug." The affidavit filed on August 4, 1959, in support of the motion for a continuance did not make such a statement. It merely said: "[T]he testimony of Dr. Rabwin is extremely material for the proper presentation of the plaintiff's case, and likewise the defense. . . ." In opposition to the motion, counsel for defendant stated: "[T]o avoid a continuance of said action, affiant agreed with counsel for plaintiff that he would stipulate to the testimony that was expected from said witness, and thereafter and at the time of the trial of the above-entitled action affiant did stipulate that said doctor examined the plaintiff herein and found that she had a cancer of the breast and that Dr. Rabwin removed said cancer by surgery. At no time did counsel for plaintiff ever state that he desired to have Dr. Rabwin give any other testimony. . . . Affiant had two conferences with Dr. Rabwin during the past five years concerning the above-entitled action and he told affiant that the act of Dr. Lawson in prescribing Stilbestrol, as was prescribed in this case, was good practice, that he himself followed such practice in similar cases."

The determination of a motion for a new trial rests so completely within the court's discretion that its action will not be disturbed unless a manifest and unmistakable abuse of discretion clearly appears, and the order will be affirmed if it may be sustained on any ground. (*Los Angeles City High School Dist.* v. *Kita,* 169 Cal.App.2d 655, 664 [338 P.2d 60].)

We cannot say the court abused its discretion in denying plaintiff's motion for new trial.

Finally plaintiff asserts the reporter's transcript is not "a full, true and correct transcript." The reporter's transcript is certified by the reporter and the county clerk as "a full, true and correct transcript on appeal." The burden was on plaintiff of producing a record on appeal affirmatively showing error. (*Lerno* v. *Obergfell*, 144 Cal.App.2d 221, 223-224 [300 P.2d 846] ; Rules on Appeal, rules 4-10.) If the transcript is not complete, plaintiff should have requested correction in the trial court. (Rules on Appeal, rule 8.)

Affirmed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied December 27, 1961, and appellant's petition for a hearing by the Supreme Court was denied January 24, 1962.