[Civ. No. 26164.   Second Dist., Div. Three.   May 29, 1963.]

DALE L. SIMMONS et al., Plaintiffs and Respondents, v. LLOYD A. DRYER, Defendant and Appellant.

Edward L. Lacy for Defendant and Appellant.

Cox & Ross and Bernard Grossman for Plaintiffs and Respondents.

FORD, J.— ■ The plaintiffs brought suit for specific performance of an agreement for the sale of real property. After a trial, judgment was entered in their favor on September 16, 1960. Thereafter, on September 30, 1960, the defendant filed a notice of a motion to set aside the judgment "on the ground that there was a lack of jurisdiction in the Court to make and enter said judgment." That motion was heard and on October 26, 1960, the court ordered that the findings of fact and the judgment be vacated and that new findings of fact and a new judgment be prepared. New findings of fact were signed and on December 6, 1960, a new judgment was entered in favor of the plaintiffs. On November 9, 1960, the defendant filed a notice of appeal from the first judgment and from the order of October 26, 1960. On December 12, 1960, he filed a "supplemental" notice of appeal from the first judgment, from the order of October 26, 1960, and from the second judgment.

Evidence which gave support to the court's determination of the factual issues will be stated. On December 29, 1958, the defendant signed a document in which he listed his real property for sale at a price of $20,000. John Platner, Jr., a salesman for the real estate broker, took an offer of $18,000 to the defendant. The offer was embodied in a "deposit receipt" dated February 5, 1959, which contained a description of the property as given in the written listing. Immediately after the statement of the purchase price of $18,000 and the printed words that "balance of purchase price [is] to be paid as follows," the "deposit receipt" contained the following handwritten provisions: "Cash to new loan to be obtained by buyer from Valley Federal of $13000 or other loan of buyer's choice. Seller to furnish termite report showing property to be free and clear of termite infestation and dry rot. Selling price to be free of all bonds, liens and assessments. Buyer to pay off existing 1st T D of approximately $6640 and 2nd T D of approximately $5100 from proceeds of new loan." The defendant, on February 5, 1960, refused to accept that offer.

Joe Gardner, a real estate broker, who was in the same office as Mr. Platner, went to the defendant on February 10, 1959, with an offer of $18,900. After some discussion, Mr. Gardner wrote on the "deposit receipt," beneath the language heretofore quoted, the following: "Seller will accept $19,-500.00 cash $5000 Balance in form of a 2nd trust deed payable at 1% per month or more including interest @ 6% Due & Pay

in 3 yrs." The defendant placed his signature below the added language. Mr. Gardner also wrote "OK—at $19,-500.00," and the plaintiff Dale L. Simmons placed his signature opposite that notation and immediately under the defendant's signature. Mr. Gardner then proceeded to open an escrow at a branch of the Bank of America and presented to the bank the $500 check of the plaintiff Bonnie Lee Spriggs which had been received on February 5, 1959.

The defendant refused to proceed with the sale and the suit for specific performance was instituted. In the course of the litigation it was stipulated by the parties that the reasonable market value of the property was $19,500 during the period of February 5 to February 18, 1959. Mr. Simmons testified that he had the consent and approval of the other plaintiffs, all of whom were buying the property together, to each offer which was made. He further testified that they had the cash required under the agreement which could have been deposited in the escrow if the transaction had proceeded.

The first question to be resolved is the validity of the order made by the trial court on October 26, 1960,[1] pursuant to which new findings of facts were signed and the second judgment was entered. In the notice of motion it was stated that the ground thereof would be "that there was a lack of jurisdiction in the Court to make and enter said judgment, and that, by reason thereof, the judgment, as entered, is, in fact, void." It was further stated in the notice that "by way of alternative relief" the defendant would ask that the judgment be modified by providing that the defendant should have "forty days from the date upon which this judgment becomes final" (rather than forty days from the date thereof) within which to convey the property.

There is no basis in the record for a determination that the action of the court was taken for the purpose of correcting a clerical error. (See *Scribner* v. *Bertmann*, 129 Cal. App.2d 204, 211-213 [276 P.2d 697].) No motion for a new trial was made and, consequently, the provisions of section 662 of the Code of Civil Procedure were not applicable.[2]

---

[1]The minute order of that date is as follows:
"'Defendant's motion to set aside judgment, heretofore made, and submitted by the Court, is now granted, and the Judgment made on Sept. 12, 1960 and the Findings are set aside and vacated, as set forth in detail by the Court in his letter to counsel, dated Oct. 26, 1960. Counsel for plaintiffs is directed to prepare Findings and Judgment in accordance with the letter of decision.'"

[2]Section 662 of the Code of Civil Procedure is in part as follows: "In ruling on such motion, in a cause tried without a jury, the court may, on

(*Moklofsky* v. *Moklofsky,* 79 Cal.App.2d 259, 264 [179 P.2d 628]; see *Hunydee* v. *Superior Court,* 198 Cal.App.2d 430, 432 [17 Cal.Rptr. 856].) The defendant's motion was not one for relief under the provisions of section 473 of the Code of Civil Procedure because of mistake, inadvertence, surprise or excusable neglect. Moreover, there was established no valid basis for the vacation of the judgment on the ground of lack of jurisdiction to render it. It is true that in the points and authorities in support of his motion the defendant asserted that the ''judgment as entered, moreover, essentially ignores the findings''; but the action of the trial court cannot be justified under section 663 of the Code of Civil Procedure because the court did not merely set aside and vacate the judgment and enter another and different judgment but, in addition, vacated the findings of fact and ordered that new findings be prepared.[3] (*Jones* v. *Clover,* 24 Cal.App.2d 210 [74 P.2d 517]; see *Moklofsky* v. *Moklofsky, supra,* 79 Cal.App.2d 259, 264.) Therefore, the conclusion must be that the order of October 26, 1960, was a nullity and the new findings of fact and judgment filed pursuant thereto were of no legal effect. (*Jones* v. *Clover, supra,* 24 Cal.App.2d 210; see *Stevens* v. *Superior Court,* 7 Cal.2d 110 [59 P.2d 988]; *Knapp* v. *City of Newport Beach,* 186 Cal.App.2d 669, 682 [9 Cal.Rptr. 90]; *Ransom* v. *Los Angeles City High School Dist.,* 129 Cal.App.2d 500, 507 [277 P.2d 455]; *Dolan* v. *Superior Court,* 47 Cal.App. 235, 241 [190 P. 469].)[4]

---

such terms as may be just, change or add to the findings, modify the judgment, in whole or in part, vacate the judgment, in whole or in part, and grant a new trial on all or part of the issues, or, in lieu of granting a new trial, may vacate and set aside the findings and judgment and reopen the case for further proceedings and the introduction of the additional evidence with the same effect as if the case had been reopened after the submission thereof and before findings had been filed or judgment rendered.''

[3]Section 663 of the Code of Civil Procedure is in part as follows: ''A judgment or decree, when based upon findings of fact made by the court, . . . may, upon motion of the party aggrieved, be set aside and vacated by the same court, and another and different judgment entered, for either of the following causes, materially affecting the substantial rights of such party and entitling him to a different judgment:

1. Incorrect or erroneous conclusions of law not consistent with or not supported by the findings of fact; and in such case when the judgment is set aside, the conclusions of law shall be amended and corrected. 2. . . .''

[4]While the doctrine of invited error (see *Van Der Veer* v. *Winegard,* 41 Cal.App.2d 518, 521 [107 P.2d 97]; *Film Technicians* v. *Color Corp. of America,* 141 Cal.App.2d 553, 555 [297 P.2d 86]) has not been overlooked in arriving at the conclusion just expressed, it cannot be fairly applied to the order of October 26, 1960, because while the defendant's motion was the occasion for the order, the order was substantially dif-

The contentions of the defendant with respect to the judgment entered on September 16, 1960, remain to be considered. The defendant argues that the findings of fact are insufficient to sustain the judgment. ■ It is true that, except as may be gathered from the findings of fact set forth in the footnote,[5] the findings do not expressly set forth an agreement of the parties for the sale of the property. However, there was a finding that "All the rest of the allegations of the Complaint are true." Part of the allegations of the second amended complaint were: "On February 10, 1959, defendant did make and execute in triplicate, an agreement in writing with plaintiffs, said agreement being entitled 'Deposit Receipt,' . . . A true copy of said agreement in writing is attached hereto, marked Exhibit 'A' and, by this reference, made a part of this complaint. . . . On February 5, 1959, plaintiffs made their initial offer to purchase said real property from defendant for the total sum of $18,000.00 as is set forth on Line 8 of Exhibit 'A.' The other terms of said offer are contained in Exhibit 'A' at lines 9-17. Upon communication of this offer of plaintiffs to defendant on February 10, 1959, defendant rejected same. . . . Later during the day of February 10, 1959, defendant made an offer to sell said real property to plaintiffs whereby the total sales price was $19,500.00. Said offer was made on the terms of $5,000.00 cash down payment, plaintiffs to secure a new loan of $13,-000.00 and to execute a second trust deed to defendant for the difference between the sum of the $5,000.00 down pay-

ferent in its nature from the relief sought by the defendant. In each instance the findings of fact and the judgment made pursuant thereto were in favor of the plaintiffs and adverse to the position of the defendant.

[5] "'That there was an offer and acceptance in writing by the plaintiff, Dale L. Simmons and the defendant Lloyd A. Dryer in regard to the said real property and sale thereof by Lloyd A. Dryer to plaintiffs. . . . That the property to be paid [sic] by defendant to plaintiff was described so that it might be identified in the written contract between the parties by showing on said writing the common address of the properties, 7039 Topanga Canyon Boulevard, and the legal description, Lot 10, Block 76 of Owensmouth, Book 19, Pages 36 and 37. . . . It is true that the defendant signed as the seller on the written agreement and that the plaintiff, Dale L. Simmons who was acting as principal and agent at all times and such [sic] transactions for himself and the other plaintiffs signed as buyers. . . . It is true that the price to be paid was $19,500.00. . . . It is true that the time and manner of payment to wit the cash to be deposited in the sum of $5,000.00 cash and new loan to be obtained by buyers at Valley Federal at $13,000.00 or other loan of buyer's choice and balance in the form of a second trust deed payable at one per cent per month or more and the interest at six percent payable in three years to defendant as beneficiary.'"

ment plus the new loan of $13,000. and the total sales price of $19,500.00 payable at the rate of 1% or more per month including interest at 6%, all due and payable in three years. The terms of the prior offers of plaintiffs as is contained on lines 9-17 of Exhibit 'A' to remain in full force and effect between the parties except as modified as appears on lines 20-30 of plaintiffs Exhibit 'A.' Said offer was communicated to plaintiffs on February 10, 1959 and was accepted by plaintiffs at such time. Defendant and plaintiffs thereupon executed and consummated the agreement contained in plaintiffs Exhibit 'A' by affixing their signatures at line 30 of said contract as noted in plaintiff's Exhibit 'A.' " The portions of the exhibit which were alleged to embody the contract are set forth in the footnote.[6]

The findings of fact are not artfully drawn but they are sufficient. ▮ As stated in *Dracovich* v. *Dracovich*, 53 Cal. App. 361 [200 P. 44], at page 363: "The finding that 'all the

---

[6] (The italicized portions represent handwritten insertions in the printed form.)

"Deposit Receipt

" 1. *Canoga Park*, California       *5 Feb*   1959
2. Deposit received from *Bonnie Lee Spriggs*
3. in the sum of *Five Hundred And No/100* . . . . . . . . .Dollars (*$500*)
                       (☒ Check, ☐ Cash)
4. as a deposit on account of purchase price of following described property located in the County of Los Angeles, State of California, to-wit:
5. *7039 Topanga Cyn Blvd*
6. *Lot 10 Blk 76 Of Owensmouth   Bk 19     Pg 36 & 37*
7. subject to covenants, conditions, restrictions, reservations, exceptions, Rights, Rights-of-way and easements, of record
8. Purchase Price   *Eighteen Thousand*   Dollars   (*$18000*   );
9. balance of purchase price to be paid as follows: *Cash to New Loan to be obtained*
10. *By Buyer from Valley Federal of $13000 or other*
11. *Loan of Buyers Choice.*
12. *Seller to furnish termite report showing property*
13. *to be free and clear of termite infestation and dry rot*
14. *selling price to be free of all bonds liens and assessments*
15. *Buyer to pay off existing 1st TD of approximately*
16. *$6640 and 2nd TD of approximately $5100 from proceeds of*
17. *new loan*
[lines 18-30:]

*Seller Will Accept*
*$19500.00 cash $5000.00 Balance*
*in form of a 2nd trust deed payable*
*at 1% per month or more including*
*interest @ 6%   Due & Pay in 3 yrs.*
        [s]   *Lloyd A. Dryer*
*OK—at $19,500.00*   [s]   *Dale L. Simmons*
[Remaining parts of document, including provisions as to policy of title insurance and escrow, are omitted.]"

allegations contained in the complaint are true' is a sufficient finding upon each and every issue arising out of the complaint and the denials in the answer." (See also *Silverstein* v. *Silverstein,* 76 Cal.App.2d 872, 875 [174 P.2d 486].)

■ Construing the findings liberally in support of the judgment, as an appellate court must do (*Gomes* v. *Borba,* 99 Cal.App.2d 38, 41 [221 P.2d 124]), it is clear that the findings of fact as to the agreement between the parties are sufficient.

■ The governing law with respect to an agreement of the nature of that presently before the court is expressed in *Dennis* v. *Overholtzer,* 178 Cal.App.2d 766 [3 Cal.Rptr. 193], at page 774, as follows: " 'An agreement for the purchase or sale of real property does not have to be evidenced by a formal contract drawn with technical exactness in order to be binding. A memorandum of the agreement (Civ. Code, § 1624, subd. 4) is sufficient, and this may be found in one paper . . .' (*King* v. *Stanley,* 32 Cal.2d 584, 588 [197 P.2d 321].)

■ Upon a sale and purchase of real property a memorandum in the form of a receipt is sufficient. (*Boehle* v. *Benson,* 150 Cal.App.2d 696, 701 [310 P.2d 650].) . . . ■ It is sufficient if the writing is subscribed by the parties to be charged (Civ. Code, § 1624; Code Civ. Proc., § 1973), names the parties to the agreement and contains the price to be paid, the terms and manner of payment and a description of the property." In *King* v. *Stanley,* 32 Cal.2d 584 [197 P.2d 321], the Supreme Court said, at pages 588-589: "Equity does not require that all the terms and conditions of the proposed agreement be set forth in the contract. The usual and reasonable conditions of such a contract are, in the contemplation of the parties, a part of their agreement. In the absence of express conditions, custom determines incidental matters relating to the opening of an escrow, furnishing deeds, title insurance policies, prorating of taxes, and the like."

■ In reaching the conclusion that the "deposit receipt" constitutes a sufficient memorandum of the agreement for the sale of the real property this court has considered and found to be without merit the contention that the provision with respect to the new loan of $13,000 is so incomplete, indefinite and uncertain that legal effect cannot be given to the agreement. The authorities upon which reliance is placed (e.g. *Roven* v. *Miller,* 168 Cal.App.2d 391 [335 P.2d 1035] and *Gould* v. *Callan,* 127 Cal.App.2d 1 [273 P.2d 93]; see also

Note 60 A.L.R.2d 251) are not applicable.[7] The present case is not one in which the parties failed to agree upon an essential term. Rather, it is one in which it was agreed that the buyers would have discretion with respect to the source and terms of the new loan of $13,000, that agreement being expressed as follows: "New Loan to be obtained by Buyer from Valley Federal of $13000 or *other Loan of Buyers Choice*." (Italics added.) (See *Ablett* v. *Clauson*, 43 Cal.2d 280, 284-285 [272 P.2d 753]; 1 Williston on Contracts (3d ed. Jaeger 1957) §§ 43-45.) Nothing was left for future agreement. The reasonable inference is that the parties intended that that loan would be secured by a first deed of trust and that the portion of the purchase price not paid to the defendant in cash would be secured by a subordinate deed of trust. Under the circumstances there was nothing unreasonable in giving discretion to the buyers with respect to the loan of $13,000 since it was to the advantage of both buyers and seller that the most favorable terms available be obtained.

■ Moreover, under the governing law the buyers were not free to act arbitrarily because, as stated in *California Lettuce Growers, Inc.* v. *Union Sugar Co.*, 45 Cal.2d 474 [289 P.2d 785, 49 A.L.R.2d 496], at page 484: ". . . [W]here a contract confers on one party a discretionary power affecting the rights of the other, a duty is imposed to exercise that discretion in good faith and in accordance with fair dealing. [Citations.]" (See also *Automatic Vending Co.* v. *Wisdom*, 182 Cal.App.2d 354, 358 [6 Cal.Rptr. 31]; *Ake* v. *Chancey*, 149 F.2d 310, 311.) ■ To reach a contrary conclusion as to the sufficiency of the agreement would be to favor the destruction of contracts because of uncertainty whereas it is the policy of the law, where it is feasible to do so, to so construe agreements as to carry into effect the reasonable intention of the parties if that can be ascertained. (See

[7]In the *Roven* case, the unpaid balance of the purchase price was to be secured by a first deed of trust containing a provision that it would be "subordinate to a First Deed of Trust to secure a construction loan which will be placed upon the property by the Trustor, or his successors and assigns, given to a recognized Savings and Loan Association or bank . . ." The court said (168 Cal.App.2d, at p. 398): ". . . the subordination clause contained in the purchase option contract does not state the amount of the construction loan which would be placed on the property, nor any of its terms, nor when said construction loan would become due, nor the rate of interest that it would bear, nor the terms or conditions of the first deed of trust to secure said construction loan. These provisions are material and essential to a contract providing for a deed of trust as security for an obligation and their absence justified the trial court in denying specific performance of the contract."

*California Lettuce Growers, Inc.* v. *Union Sugar Co., supra,* 45 Cal.2d 474, 481; *Roberts* v. *Adams,* 164 Cal.App.2d 312, 314 [330 P.2d 900].)

The defendant makes a number of criticisms of the findings of fact which need not be discussed at length. They have all been considered by this court and, with one exception hereinafter to be discussed, are without substantial merit.

Likewise without merit is the defendant's assertion that he was denied a fair trial. Part of the defendant's argument relates to the matter of the consideration given by the trial court to the depositions of plaintiffs Dale L. Simmons and Bonnie Lee Spriggs and the defendant. Mr. Simmons, while being questioned at the trial by counsel for the defendant, was asked about statements in his deposition. During the course of such examination the court inquired if it would be stipulated that the deposition could be received in evidence; counsel joined in the stipulation. Thereafter, by similar stipulation the deposition of Mrs. Spriggs was deemed to have been read into the record. At the same session the court stated that it was of the opinion that a valid contract had been established and that after the noon recess argument could be offered by counsel as to whether the contract was specifically enforceable. Counsel for the defendant said that his evidence upon that matter was ''already in . . . in the depositions.'' Before the noon recess was taken, defendant's counsel asked the trial judge if he had read any part of the depositions and the judge replied that he had not had the opportunity to do so but had ''only listened to the portions referred to this morning.'' He said that he would listen to any arguments that counsel had ''regarding anything from the deposition.'' At the beginning of the afternoon session it was stipulated that the defendant's deposition could be deemed to have been read into the record. Thereafter further testimony was given by the plaintiff Dale L. Simmons, both sides rested, and counsel argued upon the subject of whether, under the evidence, a judgment for specific performance could be rendered. The court then announced its decision in favor of the plaintiffs.

The defendant argues that the record shows that the court failed to consider the depositions. However, the trial judge may have read the Simmons and Spriggs depositions during the course of the noon recess. But, in any event, there is no showing of prejudice insofar as the defendant is concerned; each of the three parties whose depositions are involved testified at the trial; the defendant has failed to state

what material evidence, if any, was found only in the depositions and has not shown the extent to which the attention of the trial judge was directed to pertinent portions of the depositions in the course of the argument. ▮ An appellate court is not free to speculate upon the existence of prejudice under such circumstances. Moreover, this court has read the depositions; they do not contain relevant evidence of any consequence which was not otherwise before the trial court.

▮ The defendant complains that he was erroneously deprived of further testimony from the witness Gardner, who had been excused subject to recall upon telephonic notification. Mr. Gardner was not present when defendant's counsel desired to have him testify further and the court directed the defendant to proceed with his next witness. Apart from the fact that the record does not disclose that the defendant suffered prejudice because additional testimony was not given by Mr. Gardner, there is an absence of any excuse for the failure of defendant's counsel to give timely notice to the witness to return to the courtroom. The court did not abuse the broad discretion vested in it. (See *Agnew* v. *Larson,* 197 Cal.App.2d 444, 450 [17 Cal.Rptr. 538].) ▮ The defendant also asserts that error occurred by reason of the trial judge's conduct when a defense witness who was under subpoena failed to appear. The court offered to order a bench warrant to issue for the witness, but counsel stated that he did not desire that. If it be assumed that the court should have permitted the defendant's counsel a reasonable time within which to locate the witness, a bank employee, no prejudice was suffered. The anticipated testimony was that the notations on the check for $500 given to the broker as a deposit indicated that the check had been cashed at the bank upon which it had been drawn rather than delivered to the bank where the plaintiffs undertook to open an escrow. Such evidence could not destroy the effect of the uncontradicted evidence that $500, in whatever form, was delivered to the latter bank for deposit in the escrow. Moreover, the check in question bore the endorsement stamp of the bank last mentioned. No miscarriage of justice resulted.

There is one point mentioned by the defendant which has substantial merit. The "Deposit Receipt" contained printed provisions, one of which was as follows: "That the taxes, insurance premiums, interest and rents, if any, shall be prorated to ———." In the blank space the words "close of escrow" were inserted. The action for specific performance was

commenced on March 31, 1959. One of the findings of fact was: "It is true that the defendant has received the sum of $125.00 per month as rent on the premises described in the written contract and that said sum has been paid from March, 1959 to date, making a total of $2,125.00 to be credited to plaintiff[s]." In his deposition the defendant testified that about March 1959 he leased the property to a Mr. Mullens, the monthly rent being $125. But no evidence was offered and no finding of fact was made with respect to the matter of taxes and insurance premiums paid by the defendant. The law governing such a situation is discussed at length in *Greenstone* v. *Claretian Theological Seminary*, 173 Cal.App.2d 21 [343 P.2d 161]. ■ Against the amount received as rent, the vendor is entitled to credit for the amounts paid by him for taxes and fire insurance prorated over the pertinent period of time. ■ The vendor is also to be credited with interest on the purchase price withheld from him. ■ However, where the vendor is at fault, the amount of interest credited to him cannot exceed the net amount of the rents with which he is charged. By virtue of an accounting with respect to such matters, the total purchase price to be paid upon conveyance of title can be determined in harmony with the terms of the contract. (See *Greenstone* v. *Claretian Theological Seminary*, *supra*, 173 Cal. App.2d 21, 31-32, 36-37; Note 7 A.L.R.2d 1204, 1211-1212, 1218, 1226.) ■ While the defendant failed to offer evidence with respect to the amounts for which he was entitled to credit, without such evidence a court of equity could not adequately and fairly determine the amount due the vendor on the purchase price and could not fully dispose of the case in such a manner as to do complete justice. ■ As aptly stated in *Greenstone* v. *Claretian Theological Seminary*, *supra*, 173 Cal.App.2d 21, at page 37: "Where specific performance is decreed it is the duty of the court to do more than require the defendant to perform under its terms; it should safeguard his rights thereunder as well as the plaintiff's, and in addition to ordering him to execute and deliver the deed, it should make delivery conditional on the payment by the plaintiff of the amount due on the purchase price as well as any other amounts due under the terms of the contract [citations] on the theory that the court will do complete justice by adjusting the rights of all parties under the contract." ■ While, for the reason stated, the judgment must be reversed, there is no occasion to order a retrial

of the issues which have already been correctly determined (see *Lobree* v. *L. E. White Lumber Co.*, 53 Cal.App. 85, 92 [199 P. 821]), but only of the issue as to which a complete disposition has not been made.

Incidental mention should be made of the fact that the defendant asserts that the legal description of the property is not correctly set forth in the findings of fact and judgment, the property owned by the defendant being the north half of lot 10 rather than all of that lot as assumed at the trial. However, his answer admitted that the description as set forth in the second amended complaint was correct. But, in any event, at the time of the retrial of the issue to which reference has been made, there will be no difficulty in correcting any mutual mistake heretofore made as to the legal description inasmuch as there appears to be no dispute as to the identity of the property involved.

The order of October 26, 1960, and the judgment entered on December 6, 1960, are reversed. The judgment entered on September 16, 1960, is reversed and the cause remanded to the superior court with directions to that court to retry the issue of the credits to which the parties are respectively entitled and the consequent amount of the purchase price due to the defendant upon conveyance of the property, and to make findings of fact with respect thereto, and thereupon to enter an appropriate judgment[8] in favor of the plaintiffs in harmony with the views herein set forth. Each party shall bear his or her own costs on this appeal.

Shinn, P. J., and Files, J., concurred.

A petition for a rehearing was denied June 18, 1963, and appellant's petition for a hearing by the Supreme Court was denied July 24, 1963.

---

[8]While the first judgment is subject to further criticism as to its content, we do not deem it necessary to discuss the matter at length inasmuch as we assume that a proper judgment will be hereafter rendered.